UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT O'NEILL,

               Plaintiff,                               Case No. 7:25-cv-10786-NSR

-against-

THE ANTIHERO PODCAST LLC d/b/a
AntiheroPodcast.com, BRENT TUCKER,
TYLER HOOVER, COUNTER CULTURE INC.,
TIER1PODCAST LLC d/b/a TIER-1 Podcast.com,
and JAMES ANDREW ARNETT,

               Defendants.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND

Timothy Parlatore
Parlatore Law Group, LLP
*Attorneys for Defendants*
260 Madison Ave., 17th Floor
New York, New York 10016
Tel: 212-679-6312
Email: timothy.parlatore@parlatorelawgroup.com

## PRELIMINARY STATEMENT

Plaintiff's motion to remand should be denied. Removal was timely and proper, and this Court has subject matter jurisdiction based on complete diversity of citizenship and an amount in controversy exceeding $75,000.

Plaintiff's timeliness argument rests on a fundamental misreading of the removal statute. Under 28 U.S.C. § 1446(b)(2)(B), each defendant has thirty days from service to file a notice of removal. Here, Defendant James Andrew Arnett was served on December 2, 2025, and filed the Notice of Removal on December 30, 2025—well within his thirty-day window. The removal was timely.

Plaintiff's diversity jurisdiction argument fares no better. Plaintiff's own Complaint alleges that Brent Tucker and Tyler Hoover are members of The Antihero Podcast LLC and Tier1Podcast LLC, and that both Tucker and Hoover reside in Florida. (Compl. ¶¶ 39, 43-45.) These allegations, made by Plaintiff himself, establish that the LLCs are citizens of Florida. Complete diversity exists, and Plaintiff cannot now challenge jurisdiction based on facts he himself pleaded.

Finally, Plaintiff's request for attorneys' fees should be denied. To the contrary, Plaintiff's motion to remand itself lacks any objectively reasonable basis. Plaintiff misrepresents the filing date of the Notice of Removal and challenges diversity jurisdiction based on allegations in his own complaint. If any party is entitled to fees, it is Defendants for being forced to oppose this meritless motion. However, Defendants do not seek fees at this time and respectfully request that the Court simply deny Plaintiff's motion and allow this case to proceed on the merits.

## NATURE OF THE ACTION

This case arises from Defendants' truthful reporting on a matter of profound public interest: the identity of the person who killed Osama bin Laden during the May 2, 2011 raid on Bin Laden's compound in Abbottabad, Pakistan.

For more than a decade, Robert O'Neill has publicly claimed that he was "the shooter"— the SEAL who fired the fatal shots that killed bin Laden. He has parlayed this claim into a lucrative career as a motivational speaker, author, and media personality, earning tens of millions of dollars in speaking fees, book royalties, and media contracts. His bestselling memoir is titled The Operator: Firing the Shots that Killed Osama bin Laden and My Years as a SEAL Team Warrior. He has appeared on Fox News, Newsmax, and countless podcasts repeating this claim.

There is one problem: O'Neill's claim is false.

The only other member of the team who has publicly described the raid in detail is Matt Bissonnette, who published the book No Easy Day in 2012 under the pseudonym "Mark Owen." Bissonnette was present in the compound and was one of the first SEALs to reach the third floor where bin Laden was killed. His account directly contradicts O'Neill's. According to Bissonnette, the "point man"—the first SEAL up the stairs—fired the initial shots that struck bin Laden and caused him to fall. By the time O'Neill entered the room, bin Laden was already on the ground. O'Neill may have fired additional shots into bin Laden's body, but he was not "the shooter" who fired the fatal first shots.

Critically, Admiral William H. McRaven—whom Plaintiff cites as corroborating his account—was not in the room when bin Laden was shot. Admiral McRaven was at the airfield in Jalalabad, Afghanistan, monitoring the mission remotely. After the mission, McRaven claims that the officer in charge told him that O'Neill was "the man who killed Osama bin Laden." But

Admiral McRaven has no firsthand knowledge of who fired which shots. Even if he is accurately recounting the story, his "corroboration" is inadmissible hearsay—he is repeating what he was told by others.

The same is true of Plaintiff's other affiants. Will Chesney, another SEAL Team member, was conducting external security sweeps outside the building when bin Laden was shot. After the shooting, O'Neill told Chesney, "I shot that f***er in the face." Chesney accepted O'Neill's account and has repeated it. But Chesney, like Admiral McRaven, was not in the room. He has no firsthand knowledge of who fired the fatal shots.

Before publishing podcast episodes questioning O'Neill's account, Defendant Brent Tucker conducted extensive research. He read multiple published accounts of the raid, including Bissonnette's No Easy Day. He reviewed video interviews in which O'Neill described the raid. And he spoke directly with individuals who participated in Operation Neptune Spear, including Bissonnette and other SEAL Team 6 members who were present in the compound. Based on this investigation, Tucker formed a good-faith belief that O'Neill's claim was false and that the public had been given an inaccurate account of a historically significant event.

In short, not a single person who was in the room when bin Laden was shot will corroborate O'Neill's claim to be "the shooter." Bissonnette's public account directly contradicts O'Neill's and the nonpublic statements by the other team members also directly contradict O'Neill's false claims.[1]

---

[1] Interestingly, earlier today, O'Neill posted a podcast where he seems to admit both the fatal factual flaw to his claim, as well as the impropriety of this case:

> We don't want to subpoena the whole team. And this is making the whole look, you know, really bad, so for that aspect we're gonna try to drop it. We're gonna try to drop the case.

Tucker's podcast episodes expressed his opinion—based on thorough research and credible sources—that O'Neill did not kill bin Laden in the manner O'Neill has publicly claimed. These statements were on a matter of public concern and were protected by the First Amendment.

Rather than address the substance of Defendants' reporting, Plaintiff filed this lawsuit seeking $25 million in damages and putting out press releases to try to salvage his false image. Plaintiff now seeks to avoid federal court—where his claims will be subject to robust First Amendment scrutiny—by challenging removal on procedural grounds that lack any merit. For the reasons set forth below, Plaintiff's motion should be denied.

## PROCEDURAL HISTORY

On November 10, 2025, Plaintiff commenced this action in the Supreme Court of the State of New York, County of Westchester, by filing a Summons and Verified Complaint.

Defendants were served with the Summons and Complaint as follows:

a)  The Antihero Podcast LLC: November 26, 2025

b)  Counter Culture Inc.: November 29, 2025

c)  Tyler Hoover: November 29, 2025

d)  James Andrew Arnett: December 2, 2025

e)  Brent Tucker: Waived service on December 30, 2025

f)  Tier1Podcast LLC: Waived service on December 30, 2025

On December 30, 2025,[2] Defendant James Andrew Arnett filed a Notice of Removal in this Court, removing the action to federal court based on diversity jurisdiction. All other Defendants consented to the removal.

On January 9, 2026, Plaintiff filed the instant motion to remand, arguing that removal was untimely and that this Court lacks subject matter jurisdiction. For the reasons set forth below, Plaintiff's motion should be denied.

## ARGUMENT

### POINT I: REMOVAL WAS TIMELY UNDER 28 U.S.C. § 1446(b)(2)(B)-(C)

### A. The Statutory Framework and Controlling Second Circuit Authority

The removal statute provides that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1).

When there are multiple defendants served at different times, the statute further provides:

> (B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

> (C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

28 U.S.C. § 1446(b)(2)(B)-(C) (emphasis added).

---

[2] In his motion, O'Neill falsely claims that the notice was filed on January 7, 2026.  However, a review of the docket in this case quickly confirms the correct date of filing.

The Second Circuit has squarely addressed the timeliness of removal in multi-defendant actions under this statute. In *Pietrangelo v. Alvas Corp.*, 686 F.3d 62 (2d Cir. 2012), the court adopted the "later-served defendant rule," holding that "each defendant has its own thirty-day window to remove after being served." *Id.* at 65. The court explained:

> We agree with the majority of our sister circuits and adopt the later-served rule "for reasons grounded in statutory construction, equity and common sense." The plain text of the statute supports the later-served rule because "[g]iven that § 1446(a) explicitly affirms the possibility of multiple notices of removal, the only reasonable reading of § 1446(b) is that the subsection applies individually to each notice of removal that might potentially be filed by each removing 'defendant.'"

*Id.* (citations omitted). Critically, the Second Circuit held that "earlier-served defendants may properly consent to such removal even after their own thirty-day windows have lapsed." *Id.* at 66.

This rule has been consistently applied by district courts in this Circuit. *See Sara v. Talcott Resolution Life Ins. Co.*, No. 21-CV-3094 (CS), 2022 WL 50181, at *3 (S.D.N.Y. Jan. 3, 2022) ("consent is only 'late' if it is late under the defendant's own thirty-day removal period"); *Gallagher v. Boehringer Ingelheim Pharms., Inc.*, No. 22-CV-10216 (LJL), 2023 WL 1771138, at *5 (S.D.N.Y. Jan. 25, 2023) ("A defendant whose time to remove has run can consent to the timely notice of removal filed by another defendant"); *Feliz v. Vasquez*, No. 24-CV-08861 (JLR), 2024 WL 4924738 (S.D.N.Y. Dec. 2, 2024) (reaffirming individual thirty-day window for each defendant).

### B. Removal Was Timely Under § 1446(b)(2)(B) and *Pietrangelo*

Defendant James Andrew Arnett was served with the Summons and Complaint on December 2, 2025. (Schwartz Aff. ¶ 3(d).) Under 28 U.S.C. § 1446(b)(2)(B) and *Pietrangelo*, Arnett had thirty days from that date—until January 1, 2026—to file a notice of removal.

Arnett filed the Notice of Removal on December 30, 2025 (ECF No. 1). This was within his thirty-day window. The removal was timely under binding Second Circuit precedent.

All other Defendants consented to removal pursuant to 28 U.S.C. § 1446(b)(2)(C). Under *Pietrangelo*, this consent is timely even though some defendants' individual thirty-day periods had expired, because Arnett's filing was within his own window. 686 F.3d at 66.

### C. Plaintiff's Argument Ignores Controlling Authority

Plaintiff's argument that removal was untimely because it was filed more than thirty days after service on the first defendant (The Antihero Podcast LLC on November 26, 2025) is foreclosed by *Pietrangelo*. The Second Circuit expressly rejected the "first-served defendant rule" and held that "each defendant has its own thirty-day window to remove after being served." 686 F.3d at 65.

Plaintiff cites no post-*Pietrangelo* authority from this Circuit supporting his position. The cases Plaintiff cites—*Murphy Bros.*, *Somlyo*, and *Handelsman*—either predate the 2011 amendments to § 1446(b) or address different issues (such as when the removal clock begins to run). None of these cases undermine *Pietrangelo*'s clear holding that later-served defendants may remove within their own thirty-day windows.

Moreover, Plaintiff incorrectly states that the Notice of Removal was filed on January 7, 2026. (Schwartz Aff. ¶ 5.) The Notice was in fact filed on December 30, 2025 (ECF No. 1). Plaintiff's entire timeliness argument rests on this factual error.

### D. Multiple Defendants Filed or Joined Within Their Respective Windows

Moreover, Defendants Brent Tucker and Tier1Podcast LLC waived service of the Summons and Complaint on December 30, 2025. Under Federal Rule of Civil Procedure 4(d) and 28 U.S.C. § 1446(b), waiver of service constitutes 'receipt' of the initial pleading for purposes of

the thirty-day removal period. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347-48 (1999) (holding that defendant's time to remove is triggered by 'simultaneous service of the summons and complaint, or receipt of the complaint, "through service or otherwise," after and apart from service of the summons').

Tucker and Tier1Podcast's thirty-day removal periods therefore began on December 30, 2025, and do not expire until January 29, 2026. By joining in this opposition and consenting to removal, Tucker and Tier1Podcast are acting within their thirty-day windows.

Thus, removal is timely on multiple independent grounds:

1. Arnett filed on December 30, 2025, within thirty days of his December 2 service;

2. Tucker and Tier1Podcast join in removal on January 14, 2026, within thirty days of their December 30 waiver of service; and

3. All other Defendants consent pursuant to § 1446(b)(2)(C).

### POINT II: COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

### A. Plaintiff's Own Complaint Establishes Diversity Jurisdiction

Plaintiff argues that Defendants have failed to establish the citizenship of The Antihero Podcast LLC and Tier1Podcast LLC because the Notice of Removal alleges "upon information and belief" that all members are Florida citizens. This argument is refuted by Plaintiff's own Complaint.

The Complaint expressly alleges:

• "Defendants Brent Tucker and Tyler Hoover were and are owners or members or officers of the Defendant AntiHero Podcast, LLC." (Compl. ¶ 39; see also ¶ 56.)

• "Defendants Brent Tucker is/was an owner or member or officer of the Defendant Tier1 Podcast, LLC." (Compl. ¶ 43.)

- "Defendant Tyler Hoover resided at 394 Westwind Court, Lake Mary, FL 32746." (Compl. ¶ 44.)

- "Defendant Brent Tucker resided at 16895 Wingspread Loop Winter Garden, FL 34787." (Compl. ¶ 45.)

Plaintiff has thus alleged the very facts necessary to establish the LLCs' citizenship for diversity purposes. Under *Carden v. Arkoma Associates, Ltd.*, 494 U.S. 185, 195-96 (1990), an unincorporated entity is a citizen of every state of which its members are citizens. See id. at 195-96 (holding that diversity jurisdiction over an artificial entity 'depends on the citizenship of "all the members," "the several persons composing such association," "each of its members"'). Courts apply this rule to limited liability companies.

Based on these allegations—made by Plaintiff himself—the LLCs are citizens of Florida. Complete diversity exists between Plaintiff (a New York citizen) and all Defendants (Florida citizens).

**B. Jurisdiction Is Tested by the Allegations in the Complaint**

When determining whether diversity jurisdiction exists, courts look to the 'well-pleaded complaint.' *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). If the complaint alleges facts establishing diversity, defendants may rely on those allegations in the notice of removal.

Here, Defendants' Notice of Removal properly relies on the Complaint's allegations regarding the LLCs' membership. The Notice states, "upon information and belief, all members of The Antihero Podcast LLC are citizens of Florida." (Notice of Removal ¶ 18.) This statement is based on and consistent with the Complaint's allegation that Tucker and Hoover are members of the LLC and that both reside in Florida.

Plaintiff cannot plead facts establishing diversity jurisdiction and then challenge removal on the ground that those facts are insufficiently alleged. The Complaint itself demonstrates complete diversity.

### C. Residence Establishes Prima Facie Citizenship Absent Contrary Allegations

While citizenship for diversity purposes is determined by domicile, not mere residence, courts routinely accept allegations of residence as establishing domicile absent contrary evidence. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").

Here, Plaintiff alleges that Tucker and Hoover reside in Florida and makes no allegation that either maintains a domicile elsewhere or intends to return to another state. (Compl. ¶¶ 44-45.) Plaintiff has not alleged that any LLC member is domiciled in New York. Absent such allegations, the Court may accept that Tucker and Hoover are Florida citizens for diversity purposes.

### D. Residence Establishes *prima facie* Citizenship Absent Contrary Allegations

Here, Plaintiff alleges that Tucker and Hoover reside in Florida and makes no allegation that either is domiciled elsewhere. The Court may therefore accept that they are citizens of Florida for diversity purposes.

### E. Plaintiff Bears the Burden to Disprove Diversity

The party asserting diversity jurisdiction bears the burden of establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ('The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it'); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273

(2d Cir. 1994) ('the party asserting jurisdiction bears the burden of showing that the case is properly before the court').

Plaintiff has not alleged—much less proven—that any member of The Antihero Podcast LLC or Tier1Podcast LLC is a New York citizen. Plaintiff has not alleged that Tucker or Hoover are domiciled outside Florida. Plaintiff has not identified any other members of the LLCs. Absent such a showing, the Court should accept Defendants' allegations of diversity based on the Complaint's own pleadings.

### F. The Amount in Controversy Clearly Exceeds $75,000

Plaintiff does not dispute that the amount in controversy exceeds $75,000. The Complaint seeks $25,000,000 in compensatory damages, plus punitive damages, interest, and costs. (Compl., Prayer for Relief ¶¶ 2-4.) This plainly satisfies the jurisdictional threshold.

### POINT III: PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED, AND IF ANY PARTY IS ENTITLED TO FEES, IT IS DEFENDANTS

Under 28 U.S.C. § 1447(c), a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" when remanding a case. However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, Defendants had an objectively reasonable basis for removal. Binding Second Circuit precedent in *Pietrangelo* expressly permits later-served defendants to remove within their own thirty-day windows. 686 F.3d at 65-66. Defendants' removal was consistent with this clear authority. Plaintiff's motion, by contrast, ignores *Pietrangelo* entirely and relies on a factually incorrect filing date. Under these circumstances, no fee award is warranted.

Plaintiff's request for fees should be denied. To the contrary, Plaintiff's motion to remand itself lacks any objectively reasonable basis.

First, Plaintiff incorrectly states the filing date of the Notice of Removal. Plaintiff claims removal was filed on January 7, 2026. (Schwartz Aff. ¶ 5.) The Notice of Removal was in fact filed on December 30, 2025, as reflected in the CM/ECF docket (ECF No. 1). Plaintiff's entire timeliness argument rests on this factual error.

Second, Plaintiff ignores the plain text of 28 U.S.C. § 1446(b)(2)(B)-(C), which expressly permits later-served defendants to file removal within their own thirty-day windows. Plaintiff's argument that removal must be filed within thirty days of service on the first defendant is foreclosed by the statutory text.

Third, Plaintiff challenges diversity jurisdiction based on allegations in his own complaint. Plaintiff alleges that Tucker and Hoover are members of the LLCs and that both reside in Florida. Plaintiff then argues that Defendants have failed to establish the LLCs' citizenship. This argument is frivolous. Plaintiff cannot plead facts establishing diversity and then challenge removal based on those same facts.

If any party is entitled to fees, it is Defendants for being forced to oppose this meritless motion. However, Defendants do not seek fees at this time and respectfully request that the Court simply deny Plaintiff's motion and allow this case to proceed on the merits.

Defendants respectfully submit that Plaintiff's motion lacks any objectively reasonable basis and request that the Court deny the motion in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion to remand in its entirety.

Dated: New York, New York
      January 14, 2026

PARLATORE LAW GROUP, LLP

By: _____

Timothy Parlatore
260 Madison Ave., 17th Floor
New York, New York 10016
Tel: 212-679-6312
Email: timothy.parlatore@parlatorelawgroup.com
Attorneys for Defendants