## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ROBERT O'NEILL,

      Plaintiff,

           Case No. 7:25-cv-10786-NSR

  -against-

THE ANTIHERO PODCAST LLC, et al.,

      Defendants.

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## PLAINTIFF'S MOTION TO REMAND

### PRELIMINARY STATEMENT

Defendants' opposition brief is remarkable for what it reveals: a pattern of misrepresentation to this Court, an assertion that the ultimate factual issue in this case is already resolved in Defendants' favor, and a fundamental misunderstanding of the distinction between residence and domicile for diversity purposes. The Court should grant Plaintiff's motion to remand.

Most troubling, Defendants' counsel has now *twice* misrepresented Mr. O'Neill's own words to this Court, first in the pre-motion conference letter (Dkt. 7) and now again in the opposition brief. Counsel quotes Mr. O'Neill as saying "we're gonna try to drop the case," while deliberately omitting what Mr. O'Neill said *immediately after*: "**I don't want to drop the case. I want to go to court.**" This is not advocacy. This is deception.

### ARGUMENT

### POINT I

### DEFENDANTS' COUNSEL HAS REPEATEDLY MISREPRESENTED MR. O'NEILL'S STATEMENTS TO THIS COURT

In footnote 1 of their opposition brief, Defendants quote Mr. O'Neill as follows:

> *"We don't want to subpoena the whole team. And this is making the whole look, you know, really bad, so for that aspect we're gonna try to drop it. We're gonna try to drop the case."*

(Opp. Br. at 4 n.1.) Defendants then characterize this as Mr. O'Neill "admit[ting] both the fatal factual flaw to his claim, as well as the impropriety of this case." (*Id.*)

1

**This is a gross misrepresentation. Here is what Mr. O'Neill actually said, in full:**

*"But you're going to hear some spin to that. We don't want to subpoena the whole team and this is making the whole thing look really bad. So for that aspect, we're going to try to drop it. We're going to try to drop the case. **I don't want to drop the case. I want to go to court. I'm going to tell you why.**"*
*"Don't believe that bullshit."*

Mr. O'Neill was not stating his intention, he was **warning his audience about the "spin" they would hear**, and then expressly rejecting that spin. He called it "bullshit." He stated unequivocally: "I don't want to drop the case. I want to go to court."

Defense counsel quoted the "spin" Mr. O'Neill was describing while omitting Mr. O'Neill's explicit rejection of it. This is not a matter of interpretation; it is a deliberate omission of directly contradictory language. **This is now the second time defense counsel has made this misrepresentation to this Court.** (See also Dkt. 7 at 2.) The Court should consider this pattern when evaluating the credibility of all representations in Defendants' papers.

**POINT II**

**DEFENDANTS IMPROPERLY ASSERT THE ULTIMATE ISSUE AS ESTABLISHED FACT**

Defendants' opposition brief states, as established fact: "*There is one problem: O'Neill's claim is false.*" (Opp. Br. at 3.) This is an extraordinary assertion in a procedural brief on a motion to remand.

The question of whether Mr. O'Neill's account is true or false is the **centrally disputed issue in this litigation**. It is the very issue a jury will be asked to decide. Yet Defendants assert it as fact, without a shred of admissible evidence, in a brief opposing remand.

Defendants claim that "not a single person who was in the room when bin Laden was shot will corroborate O'Neill's claim." (Opp. Br. at 4.) This assertion is false for one simple reason: **Robert O'Neill was in the room. He is the first-hand witness. He will testify.**

Defendants attempt to dismiss Admiral McRaven's sworn Affirmation as "inadmissible hearsay." (Opp. Br. at 3-4.) But the mission commander, who *was* in the compound, told Admiral McRaven: "This is the man who killed Osama bin Laden." Admiral McRaven's testimony is not offered merely for the truth of who fired the fatal shots; it is offered to demonstrate **what authoritative information was publicly available that Defendants deliberately ignored**. That goes directly to actual malice.

Moreover, Admiral McRaven states under oath that "in the past 14 years since the raid, I have consistently and publicly acknowledged Rob O'Neill's role in killing bin Laden and **no one in the SEAL chain of command has ever raised concerns about the veracity of that fact**." (McRaven Aff. ¶ 3, Dkt. 2) If Defendants have witnesses who will dispute Mr. O'Neill's account, where are they? Where have they been for 14 years?

## POINT III

## DEFENDANTS' TIMELINESS ARGUMENT DOES NOT CURE THE PROCEDURAL DEFECTS

Defendants rely on *Pietrangelo v. Alvas Corp.*, 686 F.3d 62 (2d Cir. 2012), for the proposition that later-served defendants may remove within their own thirty-day windows. Plaintiff does not dispute that *Pietrangelo* adopted the later-served defendant rule. However, Defendants' reliance on this rule does not cure the defects in this removal.

**First**, the removal statutes are to be "invoked in strict conformity with statutory requirements" and "resolving any doubts against removability." *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991). This principle of strict construction applies with full force here.

**Second**, even accepting Defendants' timeliness argument, this case should be remanded because Defendants have failed to establish complete diversity of citizenship, as discussed below.

3

## POINT IV

## DEFENDANTS HAVE FAILED TO ESTABLISH COMPLETE DIVERSITY

### B.  Residence Is Not Citizenship

Defendants argue that the Complaint's allegations regarding where Tucker and Hoover "resided" establish their citizenship for diversity purposes. (Opp. Br. At 9-11.) This conflates residence with domicile.

"An individual's citizenship within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). "Domicile is the 'place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Id.* (emphasis added).

The Complaint alleges that Tucker and Hoover "resided" at certain Florida addresses. (Compl. ¶¶ 44-45.) It does not allege that Florida is their domicile, their permanent home with intention of remaining. Indeed, the Complaint uses the *past tense* ("resided"), which is consistent with a temporary residence rather than permanent domicile.

The party asserting diversity jurisdictions bears the burden of persuasion to establish it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). They cannot satisfy that burden by pointing to allegations of residence and asking the Court to assume domicile.

### B. The Complaint Does Not Establish All LLC Members

For diversity purposes, an LLC's citizenship is determined by the citizenship of *all* its members. *Carden v. Arkoma Associates, Ltd.*, 494 U.S. 185, 195-96 (1990). The Complaint alleges that Tucker and Hoover are "owners or members or officers" of the LLCs. (Compl. ¶¶ 39, 43.) This disjunctive phrasing does not establish that they are *members* (as opposed to officers), nor does it establish that they are the *only* members.

Defendants' Notice of Removal alleges "upon information and belief" that all LLC members are Florida citizens. (Notice of Removal ¶ 18.) "Upon information and belief"

allegations are insufficient to establish jurisdictional facts. See *United States Liability Insurance Company v. M Remodeling Corp.* 444 F.Supp.3d 408, 410 (E.D.N.Y 2020) (requiring specific allegations of citizenship for each member of an LLC) See also *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir. 1987) (stating that citizenship of an unincorporated association has long been determined by considering the citizenship of each member of the association).

Defendants cannot establish complete diversity by speculating about LLC membership because if any member of The Antihero Podcast LLC or Tier1Podcast LLC is a New York citizen, complete diversity is destroyed.

**POINT V**

**DEFENDANTS' RELIANCE ON ANONYMOUS SOURCES UNDERSCORES THE DISPUTED FACTS**

Defendants claim that Tucker "spoke directly with individuals who participated in Operation Neptune Spear, including Bissonnette and other SEAL Team 6 members who were present in the compound." (Opp. Br. at 4.) Yet Defendants refuse to identify these individuals.

This is the "imaginary friend" defense. For years, Defendants have claimed to have insider sources. They have never identified anyone. Now they ask this Court to accept, on a motion to remand, that their anonymous sources establish the falsity of Mr. O'Neill's account as a matter of law.  This is a non sequitur.

The Court should not credit these representations. If Defendants have witnesses, they should identify them. If those witnesses are willing to testify, they should come forward. The fact that Defendants rely on anonymous sources while dismissing Admiral McRaven's *sworn, public* Affirmation speaks volumes about the strength of their position.

## POINT VI

## DEFENDANTS' RELIANCE ON MATT BISSONNETTE IS MISPLACED

Defendants' reliance on Matt Bissonnette is just subterfuge to hide their malicious campaign against Robert O'Neill. The evidence will show that Defendants relied on their own imagination and desire to defame Robert O'Neill and create and perpetrate the narrative that Robert O'Neill was not the shooter. Even if the finder of fact finds that they referred to the book "No Easy Day", the book still does not support Defendants' statements:

1. **Bissonnette's book does not state that O'Neill "lied."** At most, it provides a different perspective on the sequence of events. Defendants extrapolated from Bissonnette's account to accuse Mr. O'Neill of fabrication, an accusation Bissonnette himself never made.

2. **Bissonnette has been discredited.** He was required to forfeit over $6.8 million to the United States government after publishing his book without required prepublication review. His book was written under a pseudonym and has been criticized by Pentagon officials.

3. **Mr. O'Neill addressed Bissonnette directly:** "And there's one guy that's been doing it, the guy that said I was, even when I was still in the Navy... And then he wrote a book before me, illegally got sued, stuff like that."

Reliance on a discredited source while ignoring the mission commander's sworn testimony is the hallmark of reckless disregard for the truth.

## POINT VII

## PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES

Defendants argue that their removal had an "objectively reasonable basis" and that Plaintiff's motion is "frivolous." (Opp. Br. at 12-13.) The record demonstrates otherwise.

Defendants removed this case on the basis of "information and belief" allegations regarding LLC citizenship. They have repeatedly misrepresented Mr. O'Neill's own words to

this Court. They assert the ultimate issue in this litigation as established fact. And they rely on anonymous sources while dismissing sworn testimony from the mission commander.

Under 28 U.S.C. § 1447(c), attorney's fees are appropriate where the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants' removal was based on speculation about LLC membership and improper jurisdictional allegations. Fees are warranted.

## CONCLUSION

Defendants' opposition brief confirms what Plaintiff has alleged from the outset: Defendants are willing to misrepresent facts to achieve their objectives. They have now misquoted Mr. O'Neill twice to this Court. They assert as established fact the very issue this litigation will resolve. And they rely on anonymous sources while dismissing sworn testimony.

This case belongs in state court. Defendants have failed to establish complete diversity, relying instead on allegations of residence (not domicile) and "information and belief" statements about LLC membership. The removal statutes are strictly construed, and all doubts are resolved against removability.

For these reasons, Plaintiff respectfully requests that the Court grant the motion to remand, award Plaintiff his costs and attorney's fees, and return this case to the Supreme Court of the State of New York, County of Westchester.


Dated: New York, New York
        January 20, 2026

Respectfully submitted,


*/s/ David M. Schwartz*
**DAVID M. SCHWARTZ, ESQ.**
546 Fifth Avenue, 6th Fl.
New York, New York 10036
Tel: (212) 641-0499
david@davidschwartzesq.com

*Attorney for Plaintiff Robert O'Neill*

7