

**Timothy C. Parlatore, Esq.**
Managing Partner
timothy.parlatore@parlatorelawgroup.com
Direct: 212-679-6312

May 6, 2026

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street, Room 275
White Plains, New York 10601

*Re: O'Neill v. The Antihero Podcast LLC, et al., Case No. 7:25-cv-10786-NSR*

Dear Judge Román:

Pursuant to Your Honor's Individual Practices, Rule 3.A.ii, and the Court's January 21, 2026 Order (Dkt. 16) inviting Defendants to renew their request for leave "following resolution of the Motion for Remand," Defendants respectfully renew their request for a pre-motion conference to seek permission to file: (1) a motion to dismiss pursuant to Rule 12(b)(6); and (2) a motion for attorneys' fees under N.Y. Civil Rights Law § 70-a.[1]

## I. THE COMPLAINT FAILS TO PLEAD ACTUAL MALICE (RULE 12(b)(6))

As a public figure, Plaintiff must plead "plausible grounds to infer actual malice by alleging enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015). The "hurdles to plausibly pleading actual malice [are] significant given the First Amendment interests at stake." *Dfinity Found. v. N.Y. Times Co.*, No. 23-7838-cv, slip op. at 4 (2d Cir. 2024). The Complaint fails for five independent reasons.

### A. Reliance on a Responsible Published Source

The Complaint acknowledges that Defendants relied on Matt Bissonnette's bestselling book *No Easy Day* (Compl. ¶¶ 25-29), and that Bissonnette was a DEVGRU member "present during the raid" who was "one of three assaulters who were first on the floor to see the dead Osama Bin Laden" (Compl. ¶ 25). This is a named, firsthand participant—the paradigmatic "responsible source." Reliance on such a source "negates a finding of 'the recklessness that is required for a finding of actual malice.'" *Greene v. Paramount Pictures*, No. 19-135-cv, slip op. at 4 (2d Cir. 2020) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 287-88 (1964)); *see also BYD Co. Ltd. v. VICE Media LLC*, No. 21-1097-cv, slip op. at 6-7 (2d Cir. 2022) (dismissing where complaint's own allegations confirmed rather than contradicted the underlying source).

---

[1] Defendants maintain that their reporting was truthful and that Mr. O'Neill was not "the shooter" as he has publicly claimed. However, even accepting the Complaint's allegations as true—as the Court must on a Rule 12(b)(6) motion—the Complaint fails to state a claim because it does not plausibly plead actual malice.

Licensed to Practice by the States of New York and New Jersey
U.S. District Courts in New York, New Jersey, Connecticut, Pennsylvania, Texas, and the District of Columbia
Parlatore Law Group is a nationwide cloud-based firm. Please send all correspondence electronically.
If physical mail is required, please use the central mailing address below.
www.parlatorelawgroup.com    1440 N Edgewood St, Arlington VA 22201

### B. No "Obvious Reasons to Doubt" Bissonnette

The Complaint's attacks on Bissonnette—pen name (Compl. ¶ 25), no DOD clearance (Compl. ¶ 26), forfeited proceeds (Compl. ¶ 26)—all relate solely to his failure to submit the book for prepublication review, not to the accuracy of its contents. The lawsuit against Bissonnette, *United States v. Bissonnette*, No. 16-cv-01070 (E.D. Va.), was a breach of contract action for publishing without authorization—not a challenge to the truthfulness of his account. None of this constitutes "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988). Post-publication consequences "do not support a plausible inference that the [Defendants] acted with malice 'at the time of publication.'" *Dfinity*, slip op. at 5 (quoting *Herbert v. Lando*, 781 F.2d 298, 306 (2d Cir. 1986)).

### C. Failure to Investigate Is Not Actual Malice

The Complaint alleges Defendants failed to conduct "rudimentary due diligence" and did not contact Admiral McRaven or O'Neill before publishing. (Compl. ¶¶ 25, 72, 76, 78.) But "[a] finding of actual malice cannot be predicated merely on a charge that a reasonable publisher would have further investigated before publishing." *Brimelow v. N.Y. Times Co.*, No. 21-66-cv, slip op. at 7 (2d Cir. 2021). Moreover, contacting Admiral McRaven would have added nothing. As the Complaint's own exhibits reveal, McRaven was not in Pakistan—he was at the airfield in Jalalabad, Afghanistan. (Compl. Ex. A.) He has no firsthand knowledge of who fired which shots. His statement that an unnamed officer told him O'Neill was "the man who killed Osama bin Laden" is hearsay within hearsay.[2] Defendants instead relied on Bissonnette—a participant who was actually inside the compound. That is the opposite of reckless disregard.

### D. Ill Will and Animosity Are Not Actual Malice

The Complaint's allegations of "malice," "jealousy," and financial motivation (Compl. ¶¶ 19, 23, 30, 43, 68, 70-71) are legally irrelevant. "[T]he actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Brimelow*, slip op. at 8 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)). These conclusory allegations do not satisfy Rule 8's plausibility standard. *Biro*, 807 F.3d at 545.

### E. The Complaint's Own Exhibits Undermine Its Claims

The Complaint attaches statements from nine individuals. Not one was in the room when bin Laden was shot. Admiral McRaven was in Afghanistan. (Compl. Ex. A.) Will Chesney was conducting external security sweeps outside the building and learned O'Neill "shot" bin Laden only because O'Neill told him so afterward. (Compl. Ex. B.) The unnamed SEAL Team Six member (Compl. Ex. C) similarly learned of O'Neill's claim only after the mission, when O'Neill "said that he had done the deed." The remaining affiants—Corbett, Drum, Gum, Larsen, Sheffield, and Tiegen—were either not on the mission or not in the building. Their statements are character references attesting that O'Neill is a "great guy" and that they believe his account because he told them his account. Every exhibit is derivative of O'Neill's own self-

---

[2] Admiral McRaven's statement presents an additional problem. He claims an unnamed officer told him O'Neill was the shooter. But on the *Cleared Hot* podcast, O'Neill admitted that the official U.S. Navy After Action Report credited the point man—not O'Neill—with the shots, and that he and the point man "changed the story so it was clean." If the official AAR credits the point man, then either the unnamed officer's statement to McRaven was inconsistent with the official record, or Admiral McRaven was aware that the official record was being falsified. In either case, McRaven's statement does not reliably corroborate O'Neill's account.

serving statements. None provides independent corroboration from a witness with firsthand knowledge. "Denials without more do not support a plausible claim of actual malice." *Brimelow*, slip op. at 6.

**In sum**, the Complaint acknowledges Defendants relied on a named, firsthand DEVGRU participant's published account, alleges no facts showing Defendants had obvious reasons to doubt that source, conflates failure to investigate and ill will with actual malice, and attaches only hearsay exhibits derivative of O'Neill's own claims. While outside the four corners of the Complaint, it bears noting that Plaintiff himself has since confirmed the reliability of Defendants' source: on the *Cleared Hot* podcast, Mr. O'Neill stated that Bissonnette's "book was based on the after action report"—the official U.S. Navy record. Defendants' reliance on a source that Plaintiff now admits reflects the official government account cannot constitute actual malice.

Additionally, many of the challenged statements constitute non-actionable opinion under Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990), particularly given that they were made on podcasts—an informal medium where audiences expect opinion, not factual reporting. *See Rapaport v. Barstool Sports Inc.,* No. 22-2080, 2024 WL 88636, at *4-5 (2d Cir. 2024).

The remaining claims, intentional infliction of emotional distress and tortious interference, are derivative of the defamation claims and fail for the same reasons. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (IIED claim based on speech about a public figure requires actual malice).

## II. DEFENDANTS ARE ENTITLED TO ANTI-SLAPP FEES UNDER N.Y. CIVIL RIGHTS LAW § 70-a

This action involves "public petition and participation" within the meaning of New York's anti-SLAPP statute. The challenged statements were made on a podcast—"a public forum" under the statute. *Gillespie v. Kling*, 217 AD3d 566, 567 (1st Dep't 2023); *Reeves v. Associated Newspapers, Ltd.*, 2024 NY Slip Op 04286, at *7 (1st Dep't 2024). The accuracy of accounts of one of the most significant military operations in American history is a matter of "public interest," which "shall be construed broadly, and shall mean any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d).

Section 70-a's fee-shifting is substantive state law applicable in federal diversity court. The Second Circuit has assumed without deciding that § 70-a applies in diversity suits. *Harris v. Am. Accounting Ass'n*, No. 22-811, at 9-10 (2d Cir. 2023) (citing *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020)). Unlike the California statute held inapplicable in *La Liberte*, New York's § 70-a creates a standalone substantive remedy not conditioned on prevailing on a CPLR 3211(g) special motion. *See Reeves*, at *6 ("not the only path"). The Court of Appeals has characterized § 70-a as providing a substantive "counterclaim." *Gottwald v. Sebert*, 40 NY3d 240, 259 (2023). Because the Complaint fails to plead actual malice, this action lacks a "substantial basis in fact and law" under § 70-a, and Defendants are entitled to mandatory fees.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request a pre-motion conference to address the proposed motion to dismiss and for anti-SLAPP fees, and an appropriate briefing schedule. Defendants are simultaneously filing a separate letter requesting leave to file a motion for sanctions under Rule 11, which involves additional matters outside the four corners of the Complaint.

Respectfully submitted,

Timothy C. Parlatore, Esq

3