

**Timothy C. Parlatore, Esq.**
**Managing Partner**
timothy.parlatore@parlatorelawgroup.com
**Direct: 212-679-6312**

May 6, 2026

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street, Room 275
White Plains, New York 10601

*Re: O'Neill v. The Antihero Podcast LLC, et al., Case No. 7:25-cv-10786-NSR*

Dear Judge Román:

Defendants respectfully request a pre-motion conference pursuant to Your Honor's Individual Practices, Rule 3.A.ii, to seek permission to file a motion for sanctions under Federal Rule of Civil Procedure 11. This letter is filed simultaneously with Defendants' separate letter requesting leave to file a motion to dismiss under Rule 12(b)(6), which addresses matters within the four corners of the Complaint. This letter addresses matters outside the four corners of the complaint, including Plaintiff's post-filing conduct.

## I. PRELIMINARY STATEMENT

For over a decade, Robert O'Neill has falsely claimed to be "the shooter" who killed Osama bin Laden, earning tens of millions of dollars in speaking fees, book royalties, and media contracts from a story that the official U.S. Navy records do not support. When anyone has questioned his account, O'Neill has responded with threats. In a now-deleted tweet, he threatened to expose the point man, the SEAL who was actually in front of him, writing: "Do you really want me to tell Red['s] story? I'll tell it. I kept that MFR out of prison." (Compl. ¶ 104, quoting O'Neill's tweet.) This lawsuit is part of the same pattern: using threats and legal process to silence anyone who challenges the story that funds his lifestyle.

O'Neill knew his story would never survive discovery in this matter. The official U.S. Navy After Action Report contradicts his public account. So, he went on the *Cleared Hot* podcast and attempted to get ahead of the inevitable by concocting an elaborate new lie: that he and the point man deliberately falsified the official record to cover up a war crime. He would rather falsely confess to a time-barred crime than to admit the truth about his continuing fraud. He stated: "In the official debrief, the truth wasn't told"; "We changed the story so it was clean"; and "I've been leaving breadcrumbs for this for 10 years now." He then confirmed that Bissonnette's book, the very source this lawsuit attacks Defendants for relying upon, "was based on the after action report."

But the problem with serial lying is that the lies eventually contradict each other. Weeks after the *Cleared Hot* interview, O'Neill told the *New York Post* that he shot bin Laden "twice" in the face, reverting to the original story from his book, which is irreconcilable with what he told *Cleared Hot*.

Licensed to Practice by the States of New York and New Jersey
U.S. District Courts in New York, New Jersey, Connecticut, Pennsylvania, Texas, and the District of Columbia
Parlatore Law Group is a nationwide cloud-based firm. Please send all correspondence electronically.
If physical mail is required, please use the central mailing address below.
www.parlatorelawgroup.com        1440 N Edgewood St, Arlington VA 22201

He has now publicly told at multiple materially different versions of the same event within weeks of each other. And in a recent social media video, he publicly identified a DEVGRU teammate by name and declared: "I know a lot of shit. Not just about this raid… I know where the bodies were buried," a veiled threat directed at anyone who might testify against him.

The contrast between the parties could not be starker. Plaintiff has produced witnesses who say that O'Neill has always *claimed* to be the shooter. Defendants will produce witnesses with firsthand knowledge that he is not.

Rule 11 exists to prevent this kind of abuse. By signing the Verified Complaint, counsel certified that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). That certification imposes a continuing obligation to reassess claims "after learning that they cease to have any merit." *Mata v. Avianca, Inc.*, No. 22-cv-1461 (PKC), slip op. at 10 (S.D.N.Y. June 22, 2023). "The failure to correct a prior statement in a pending motion is the later advocacy of that statement and is subject to sanctions." *Id.* (citing *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017)). O'Neill's own post-filing conduct has destroyed the factual basis for this lawsuit. Counsel's continued prosecution of these claims violates Rule 11.

## II. O'NEILL'S ADMISSIONS DESTROY THIS LAWSUIT

### A. Contradictory Versions

O'Neill has told multiple materially different versions: (1) his book and speeches, in which he shot bin Laden 2-3 times in the face while bin Laden was standing; (2) the *Cleared Hot* podcast, in which the point man missed, O'Neill shot bin Laden in the chest, and another operator shot the dead body point-blank in the face, desecrating the corpse, a war crime which he claims necessitated falsification of the debrief; and (3) the official debrief, which O'Neill now claims was falsified. These versions are irreconcilable. A plaintiff who cannot maintain a consistent account of the events at issue cannot sustain a defamation claim.

### B. O'Neill Confirms Defendants' Allegedly Defamatory Statements Match the Official Navy Record

O'Neill stated on *Cleared Hot* that Bissonnette's "book was based on the after action report." Defendants' reporting was therefore consistent with the official U.S. Government account. The Complaint attacks Defendants for relying on Bissonnette (Compl. ¶¶ 25-29), but O'Neill himself now confirms that source reflects the official record.

### C. Either Way, the Claims Fail

Even if O'Neill's *Cleared Hot* account is true, his claims fail because Defendants' statements are consistent with the official Navy record, and O'Neill has admitted to lying in his book, speeches, and Verified Complaint for over a decade. If O'Neill is lying on *Cleared Hot*, falsely confessing to time-barred crimes to preemptively explain why discovery will be devastating, then he is a serial fabricator whose credibility is destroyed. Either way, this lawsuit cannot continue.

### III. WITNESS INTIMIDATION

O'Neill's pattern of threatening potential witnesses continues. In a recent social media video, he publicly identified DEVGRU teammate Alex West by name for the first time, stated he was "excited to see how comfortable he is with it," and declared: "I know a lot of shit. Not just about this raid, I know a lot of shit. I know where the bodies were buried." Mr. West recently appeared on Defendant Tucker's podcast but chose not to discuss O'Neill's role in the bin Laden raid. However, despite his desire not to discuss it on the podcast, Defendants are confident that his testimony will not support Plaintiff's lies. Perhaps this is why O'Neill made a video subtly threatening West and the rest of the team.[1]

This conduct—combined with the earlier deleted tweet threatening to expose "Red" and "tell [his] story"—demonstrates consciousness of guilt and bad faith prosecution. Federal courts have inherent authority to sanction bad-faith litigation conduct. *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 148 (2d Cir. 2023). Such authority extends to threatening conduct directed at litigation participants. *Davis v. Saint Luke's-Roosevelt Hosp. Ctr.*, No. 18-1542-cv, slip op. at 2-3 (2d Cir. 2019). Even a single act of bad faith may warrant monetary sanctions. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 371 (2d Cir. 2021).[1]

### IV. RULE 11 REQUIRES SANCTIONS

Plaintiff's counsel is now on notice that his client has told multiple irreconcilable versions of the events underlying this lawsuit, has confirmed that Defendants' primary source reflects the official Navy record, and has engaged in witness intimidation. Where counsel continues to pursue claims after learning that central allegations are false, sanctions are warranted. *Dukas v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA), slip op. at 4 (S.D.N.Y. Sept. 23, 2024) ("[E]ven assuming counsel initially believed that evidentiary support existed, he appears to have acted in bad faith once he was on notice of the falsity of [plaintiff's] allegations."). Continuing to prosecute this action under these circumstances violates Rule 11.

### V. PROPOSED BRIEFING SCHEDULE

Because the Rule 11 motion involves a mandatory 21-day safe harbor period under Fed. R. Civ. P. 11(c)(2), Defendants respectfully request a briefing schedule with four deadlines: (1) service of the Rule 11 motion on Plaintiff's counsel; (2) filing after safe harbor expiration; (3) opposition; and (4) reply.

Respectfully submitted,

Timothy C. Parlatore, Esq.

---

[1] Defendants are considering filing a separate motion enjoining Plaintiff from making any threats against witnesses. Pursuant to Your Honor's Individual Practices, no pre-motion conference would be required for such a motion, but I wanted to raise it anyway so that the Court is aware and has the potential of discussing this as well at the conference.