UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT O'NEILL,

      Plaintiff,

     -against-                         Case No. 7:25-cv-10786-NSR


THE ANTIHERO PODCAST LLC
d/b/a AntiheroPodcast.com,
BRENT TUCKER,
TYLER HOOVER,
COUNTER CULTURE INC.,
TIER1PODCAST LLC d/b/a TIER-1 Podcast.com, and
JAMES ANDREW ARNETT,

      Defendants.

-------------------------------------------------------------------X

### DECLARATION OF TIMOTHY C. PARLATORE IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

I, Timothy C. Parlatore, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a member of the bar of this Court and a partner at Parlatore Law Group, LLP, counsel of record for Defendants The Antihero Podcast LLC d/b/a AntiheroPodcast.com, Brent Tucker, Tyler Hoover, Counter Culture Inc., Tier1Podcast LLC d/b/a TIER-1 Podcast.com, and James Andrew Arnett (collectively, "Defendants") in the above-captioned action. I submit this declaration in support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and the Court's Inherent Authority. I have personal knowledge of the facts set forth herein unless otherwise indicated.

1

**The Cleared Hot Podcast**

2.   On or about January 26, 2026, approximately one month after the Complaint was filed in this action, Plaintiff Robert O'Neill appeared on the Cleared Hot podcast, hosted by Andy Stumpf. The episode, titled "The Raid, The Record, and The Lawsuit | Rob O'Neill | EP 429," is publicly available at https://podcasts.apple.com/us/podcast/the-raid-the-record-and-the-lawsuit-rob-oneill-ep-429/id1247300054?i=1000746688623. I have personally reviewed the episode in its entirety and certify that the quotations set forth below and in the accompanying Memorandum of Law are accurate.

3.   On the Cleared Hot podcast, O'Neill described the official United States Navy after-action report of the bin Laden raid in terms that match the account Defendants reported in their podcast. At approximately 1:04:09-1:04:27, O'Neill stated: "The difference was the shot hit him on the top of the head and then what we said was and then I went in and he was circling the drain. That's the story. That's clean. Clean. Meaning there's no questions. That's their debrief."

4.   O'Neill claimed that the official after-action report was deliberately falsified. At approximately 1:00:03-1:00:10, he stated: "I would not have provided the top cover in the afteraction report that I did." At approximately 1:34:39-1:34:46, he stated: "We changed the story so it was clean and it's over." At approximately 1:05:06-1:05:20, he stated: "in the official debrief, the truth wasn't told." At approximately 1:33:39-1:33:48, he stated: "we changed it. It was clean like every other debrief."

5.   At approximately 1:01:24-1:01:35, O'Neill described the first debrief as occurring "over Bin Laden's body in Jalalabad." At approximately 1:22:31-1:22:48, he stated that the debrief occurred with "Admiral McCraven there and 01 there and everyone there."

6.  O'Neill described a version of the bin Laden shooting that is materially different from the version in his book, The Operator. At approximately 1:12:40-1:12:46, O'Neill stated that he was "eight dudes back" in the assault stack, not the number-two man as described in his book. At approximately 1:14:37-1:15:22, he described working his way forward only after the initial entry: "So when I'm back here, point man goes here, shoots, everyone splits and then I … came up as two man now."

7.  On Cleared Hot, O'Neill described a post-mortem shooting of bin Laden's body that does not appear in his book or in any of his prior public accounts. At approximately 1:17:57-1:18:05, he stated: "Guys are shooting Bin Laden. I need to go get a picture. I pour water on his face. Someone point blank shoots him in front of me."

8.  At approximately 1:32:31-1:32:43, O'Neill stated: "I wanted that top cover forever, man. I'm happy to die with that knowledge. It sucks. It [expletive] sucks."

9.  O'Neill confirmed that Bissonnette's book, No Easy Day, the primary source Defendants relied on in producing their podcast, is based on the official after-action report. At approximately 1:27:42-1:27:54, O'Neill stated: "well his his book was based on the after action report." O'Neill further confirmed that the government's lawsuit against Bissonnette concerned the unauthorized publication, not the accuracy of his account: "he got sued and lost for writing it in the first place, right? Not the accuracy of it." At approximately 1:28:12-1:28:37, O'Neill elaborated: "I don't think his he didn't get sued because of factual inaccuracy. He got sued because he never got it cleared and had permission to write it. … It wasn't for um accuracy of the details that he was putting in. It was for the fact that he wrote the thing in the first place."

**The New York Post Interview**

10. On or about May 2, 2026, four days before Defendants served their pre-motion letter in this case, O'Neill gave an interview to the New York Post in which he reverted to the version of events described in his book. The article is publicly available at https://nypost.com/2026/05/02/us-news/us-navy-seal-who-killed-osama-bin-ladens-reflects-on-historic-raid-15-years-later/.  I have personally reviewed the article and certify that the quotations set forth below and in the accompanying Memorandum of Law are accurate.

11. In the New York Post interview, O'Neill stated: "I recognized him immediately. I was impressed with how skinny he was. His beard was sort of gray. His hands were on his wife Amal's shoulders. I took it as a threat; he could blow himself up." He continued: "I shot him twice and shot him again with my H&K 416. He crumpled on the foot of his bed."

**O'Neill's Speaking Career and Financial Enterprise**

12. O'Neill has publicly stated that he delivered "between 250 and 300 speeches" per year. This statement appeared in a Fox News Digital article publicly available at https://www.foxnews.com/politics/navy-seal-who-killed-bin-laden-slaps-hotel-lawsuit-incident-derailed-career-didnt-happen. I have personally reviewed the article and certify that the quotation is accurate.

13. In a separate federal lawsuit, O'Neill v. Frisco Silver Star Hotel Corp., No. 3:24-cv-02074 (N.D. Tex.), O'Neill described himself as a "motivational speaker, public commentator, and author" and alleged that "anytime a person researches 9/11 or Osama bin Laden, O'Neill's name will show up." The complaint in that action is a public filing available on PACER.

### O'Neill's Broader Credibility Issues

14. In 2013, O'Neill publicly claimed to have helped rescue SEAL Marcus Luttrell in Afghanistan and to have been SEAL Team Six's "lead paratrooper" in the rescue of Captain Richard Phillips from Somali pirates. In 2014, the former commander of SEAL Team Six publicly stated that O'Neill had not played a "singular role" on either mission. The relevant reporting is publicly available at https://www.staradvertiser.com/2014/11/07/news/another-ex-commando-says-he-shot-bin-laden/. I have personally reviewed the article and certify that the quotations are accurate.

### O'Neill's Removal from DEVGRU

15. Based on my own interviews with witnesses who served alongside O'Neill at DEVGRU, and who are expected to testify during discovery in this action, O'Neill was removed from DEVGRU for telling the story that became the basis of his public career and his book, The Operator.

### O'Neill's Conduct Toward Witnesses

16. After filing the Complaint, O'Neill publicly identified DEVGRU teammate Alex West by name in a social media video. In that video, O'Neill stated that he was "excited to see how comfortable he is with it" and declared: "I know a lot of shit. Not just about this raid, I know a lot of shit. I know where the bodies were buried." The video is publicly available at https://www.instagram.com/reel/DXcwnvOEtIt/. I have personally reviewed the video and certify that the quotations are accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 11, 2026

Timothy C. Parlatore, Esq.