**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ROBERT O'NEILL

                Plaintiff,

   - against -

THE ANTIHERO PODCAST LLC d/b/a
AntiheroPodcast.com, COUNTER CULTURE INC.,
TIER1PODCAST LLC d/b/a TIER-1 Podcast.com,
BRENT TUCKER, TYLER HOOVER, and JAMES
ANDREW ARNETT individually,

                Defendants.

**Case No.: 7:25-cv-10786-NSR**

<u>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND IN OPPOSITION TO
DEFENDANTS' REQUEST FOR ATTORNEY'S FEES
UNDER N.Y. CIVIL RIGHTS LAW § 70-a**</u>

**DAVID M. SCHWARTZ, ESQ.**
546 Fifth Avenue, 6th Floor
New York, New York 10036
Tel.: (212) 641-0499
david@davidschwartzesq.com

*Attorney for Plaintiff Robert O'Neill*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

    A.    Plaintiff And The Operation ....................................................................................... 2

    B.    Defendants' "Web of Lies" Campaign And Their Admissions. ..................................... 2

    C.    Defendants' Motive, Animus, And Post-Filing Conduct. .............................................. 3

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.    THE COMPLAINT STATES A DEFAMATION CLAIM AS DEFENDANTS'
STATEMENTS PLAUSIBLY ESTABLISH ACTIONABLE FACT, FALSITY, AND ACTUAL
MALICE ................................................................................................................................... 5

    A.    Defendants' Statement O'Neill "Didn't Kill bin Laden," Is A "Liar," And Engaged In
"Stolen Valor" Are Actionable Factual Assertions And Are Defamatory *per se*. ...................... 5

    B.    Plaintiff's Complaint Plausibly Pleads Actual Malice As Defendants Misrepresented An
Alleged Contrary Source, Lacked Firsthand Verification, And Willfully Disregarded Contrary
Evidence Despite Admitting Uncertainty. ...................................................................................... 6

        1.    The Bissonnette "Reliance" Does Not Support The Statements Defendant Made And
Was Not In Place Prior To Publication. ......................................................................................... 7

        2.    Defendants Disregarded The Most Authoritative Contrary Evidence Available To
Them And Their Statements Show They Knew The Question Was Unresolved. ............................ 8

        3.    Defendants' Contempt, Resentment, And Retaliation Against O'Neill Reinforce The
Malice Already Pleaded, And That Question Is For The Jury. ....................................................... 9

        4.    Resolving The Conflict Between Admiral McRaven's And Bissonnette's Accounts Is
A Jury Question, Not A Pleading Defect. ...................................................................................... 10

    C.    Defendants' Statements Satisfy Each Factor Of The Fact-Or-Opinion Test And Are
Therefore Actionable. .................................................................................................................... 11

    D.    The "Gist" Of Defendants' Statements Is False, Not Merely Disputed. ........................ 12

II.    THE COMPLAINT'S TIMELY PUBLICATIONS INDEPENDENTLY SUPPORT EACH
CLAIM, AND WHETHER PRIOR STATEMENTS WERE REPUBLISHED IS A QUESTION
OF FACT FOR A JURY DETERMINATION ........................................................................ 13

III.    THE COMPLAINT PLEADS FACTS SUFFICIENT TO SUSTAIN EACH REMAINING
CLAIM. ................................................................................................................................... 14

    A.    Plaintiff's Intentional Infliction Of Emotional Distress Claim Is Adequately Pleaded On
Non-Duplicative Facts .................................................................................................................. 15

    B.    Plaintiff's Tortious Interference With Prospective Business Relations Claim Is Adequately Pleaded On Non-Duplicative Facts. ........................................................................ 16

IV.     DEFENDANTS' ANTI-SLAPP FEE DEMAND SHOULD BE DENIED AS DEFENDANTS CANNOT SATISFY THE SUBSTANTIAL-BASIS STANDARD, AND THEIR CONDUCT IS AN ABUSE THE STATUTE TARGETS ............................................. 19

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Anonymous v. Omnicom Grp., Inc.*, 852 F.3d 195 (2d Cir. 2017) ................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................ 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................... 4, 10, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 14

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015) ......................................................................... 6, 9

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004) ............................................................................... 17

*Celle v. Filipino Rep. Enters. Inc.,* 209 F.3d 163 (2d Cir. 2000) ............................................ 5, 9, 11

*Dongguk Univ. v. Yale Univ.*, 734 F.3d 113(2d Cir. 2013) ............................................................. 7

*Elias v. Rolling Stone LLC*, 872 F.3d 97 (2d Cir. 2017) ................................................................. 11

*Firth v. State*, 98 N.Y.2d 365 (N.Y. 2002) ............................................................................... 13, 14

*Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) .............................................................................. 10

*Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87 (1st Dep't 2015) ............................................... 12

*Friedman v. Bloomberg L.P.*, 884 F.3d 83 (2d Cir. 2017) ............................................................. 12

*Garrison v. Louisiana*, 379 U.S. 64 (N.Y. 1964) .............................................................................. 9

*Goldblatt v. Seaman*, 225 A.D.2d 585 (2d Dep't 1996) .................................................................. 6

*Gross v. N.Y. Times Co.*, 82 N.Y.2d 146 (N.Y. 1993) .................................................................. 11

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (N.Y. 1980) .................... 17

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ....................................... 8, 10

*Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708 (2d Dep't 2010) ........................................... 15

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) .............................................................................. 20

*Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992) .......................................................................... 5

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020) ................................................................... 4

*Martin v. Daily News L.P.*, 121 A.D.3d 90 (1st Dep't 2014) ......................................................... 13

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990) ........................................................................ 5, 6, 11

*Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293 (N.Y. 1983) ................................................. 15

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................................................ 6

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614 (N.Y. 1996) ....................... 17

*Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466 (N.Y. 1993) .................................... 6, 9

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) ..................................................... 15

*St. Amant v. Thompson*, 390 U.S. 727 (1968)............................................................. 6, 7, 8

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (N.Y. 1986) ............................................. *passim*

*Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28 (1st Dep't 2014) ..................................... 5

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) ..................... 12

*Vasarhelyi v. New Sch. for Soc. Rsch.*, 230 A.D.2d 658 (1st Dep't 1996) .................................. 16

*Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265 (1st Dep't 2002) ............................................ 18

**Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ *passim*

Fed. R. Civ. P. 15(a)(2) ..................................................................................................... 18

Fed. R. Civ. P. 8(a)........................................................................................................ 4, 14

N.Y. C.P.L.R. § 215(3) ..................................................................................................... 13

N.Y. Civil Rights Law § 70-a(1)(a) ........................................................................... *passim*

**Other Authorities**

Mark Owen [pseudonym for Matt Bissonnette] & Kevin Maurer, *No Easy Day: The Firsthand Account of the Mission That Killed Osama Bin Laden* 235 (Dutton 2012). ........................... 3, 7

## PRELIMINARY STATEMENT

This is a defamation action arising from The Antihero Podcast LLC d/b/a AntiheroPodcast.com (hereinafter, "Antihero Podcast"), Counter Culture Inc. ("Counter Culture") and TIER 1 PODCAST LLC d/b/a TIER-1 Podcast.com ("Tier 1"), Brent Tucker ("Tucker"), Tyler Hoover ("Hoover"), and James Andrew Arnett ("Arnett") (collectively, "Defendants") repeated, categorical assertions that Robert O'Neill ("Mr. O'Neill" or "Plaintiff") fabricated his role in the raid that killed Osama bin Laden. This is an action about whether Defendants represented to their audience, as fact, that an American war hero fabricated the defining act of his life. They did. Over the course of a multi-year, monetized campaign titled "The Web of Lies," Defendants flatly and repeatedly declared that O'Neill "didn't kill Bin Laden," that he is a "liar" and a fraud, and that he committed "stolen valor." (Compl. ¶¶ 1, 11, 18, 29, 68, 98; Exhs. A, B; C; D) (Statement of Facts § B, *infra*.) These are not the hedged musings of commentators weighing competing accounts. They are categorical assertions of fact about a specific, verifiable historical event.

Defendants' Motion asks this Court to do something FED. R. CIV. P. 12(b)(6) forbids: credit Defendants' version of events, resolve sharply disputed facts in their favor, and dismiss a Complaint that pleads falsity and actual malice in extraordinary detail (ECF No. 26 p. 1, 7). Accepting those well-pleaded allegations as true, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and their request for attorney's fees under New York's anti-SLAPP statute (ECF No. 27.)

## STATEMENT OF FACTS

**A. Plaintiff And The Operation.**

O'Neill is a decorated former United States Navy SEAL who served for over sixteen (16) years in the Navy, including as a member of SEAL Team Six, and conducted hundreds of combat missions. (Compl. ¶¶ 1, 14.) On May 2, 2011, during Operation Neptune Spear, O'Neill entered the third-floor bedroom of the Abbottabad compound and fired the shots that killed Osama bin Laden. (Compl. ¶¶ 7, 8.) He has maintained that account consistently for more than a decade, in a bestselling memoir and in hundreds of public appearances. (Compl. ¶¶ 5, 25.)

Admiral William H. McRaven ("Admiral McRaven"), who commanded Operation Neptune Spear, has confirmed under oath that O'Neill was identified immediately after the mission as the man who killed Osama bin Laden, that "no one on that SEAL team disputed the fact," and that in the years since, "no one in the SEAL chain of command has ever raised concerns." (Compl. ¶¶ 9, 28) Fellow SEAL Team Six member Willl Chesney ("Chesney") has given an affirmation to the same effect and have independently corroborated that account in affirmations submitted in this action. (Compl. ¶¶ 12, 76; Chesney Decl.)

**B. Defendants' "Web of Lies" Campaign And Their Admissions.**

Defendants operate the Antihero Podcast and related media ventures. Beginning in or around August 2023, they produced and disseminated a multi-part series titled "Rob O'Neill: The Web of Lies," across YouTube, Spotify, IMDb, and Podtail. (Compl. ¶¶ 103, 137.) Defendants did not frame this as a commentary or opinion. In the series and surrounding statements, Defendants told their audience: "Rob O'Neill who didn't kill Bin Laden . . . ." "No he didn't kill Bin Laden!" "I'd be as big a liar as Rob O'Neill" (Ex. C.) "He made his fame and fortune off of a lie." (Compl. ¶¶ 89, 114, 118, 129.) Defendants also called O'Neill a "liar," a "fraud," and stated

2

that he committed "stolen valor." (Compl. ¶¶ 1, 11, 29, 74, 98, 138.) Defendants framed the series as investigative fact, boasting that they had "exposed the guy . . . for lying to America." (Compl. ¶ 114, 129.)

Defendants have identified Matt Bissonnette's ("Bissonette") book, *No Easy Day*, as the source for their accusation that O'Neill fabricated his account. (Compl. ¶ 106.) Bissonnette's book does not state that O'Neill lied, and it does not identify any other person as having fired the fatal shot. (Compl. ¶ 120.) Bissonnette wrote that he "couldn't tell from [his] position if the rounds hit the target or not." (*See* Mark Owen [pseudonym for Matt Bissonnette] & Kevin Maurer, *No Easy Day: The Firsthand Account of the Mission That Killed Osama Bin Laden* 235 (Dutton 2012).)

Prior to publishing "Web of Lies," Defendants had not spoken with a single person who was present when Osama bin Laden was killed. On November 13, 2025, Defendant Tucker conceded that by the time Bissonnette reached out to him, it was "a little late now" because Tucker had "really hoping to talk to a guy who was in the room before I did this podcast." (Ex. D.) Tucker has also acknowledged that he has never spoken directly with "Red," the point man whom Defendants identify as having fired the fatal shot. (Ex. C.) Further, in a Counter Culture video, Defendants conceded that "three names came up. Three different shots. Three different stories," that when asked "which one did the final thing . . . nobody can tell," and that "not even the CIA or anybody can determine that." (Ex. D.) Defendants thus told their audience, in substance and sometimes in the same breath, both that no one can know who killed bin Laden and that they know O'Neill did not. That contradiction lies at the heart of the actual malice allegations.

## C. Defendants' Motive, Animus, And Post-Filing Conduct.

Defendant Tucker stated that "[t]he people who did lie really did make A LOT of money and that shouldn't sit right with you," and disparaged O'Neill as "so full of shit. I hate guys like

this." (Ex. E; O'Neill Decl.)  After this action was filed, Defendants directly contacted Barstool Sports—a supporter of O'Neill's Daytona 500 appearance—and informed Barstool officials that O'Neill is "a liar," discouraging further business with him. (Ex. C.)  Defendant Arnett threatened O'Neill directly, stating he looked forward to telling O'Neill to his face "GO F[—] YOURSELF," and, when warned of contempt, that he would do so "Not in the courtroom. Outside," proposing to fight O'Neill "in the dark parking lot." (O'Neill Decl.) Defendant Tucker sent menacing messages to the social-media account managed by O'Neill's pregnant wife, warning that "an Admiral who wasn't there won't save you." (Ex. C; O'Neill Decl.)

## STANDARD OF REVIEW

On a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (explaining the Federal Rules of Civil Procedure do not demand  "detailed factual allegations," only requiring a "short and plain statement of the claim."); *see also* FED. R. CIV. P. 8(a).  The Court's task is to assess the legal sufficiency of the Complaint, not to weigh evidence, resolve factual disputes, or choose between competing versions of events. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). Those principles are especially important here because Defendants' Motion turns on what Defendants knew, believed, ignored, and intended when they published the challenged statements.

Since this Court sits in diversity, New York substantive law governs Plaintiff's state-law claims, including defamation, falsity, opinion, republication, tortious interference, intentional infliction of emotional distress, and N.Y. Civil Rights Law § 70-a(1)(a).  Federal law governs the

4

Rule 12(b)(6) pleading standard and the constitutional actual-malice requirements applicable to public-figure defamation claims.

## ARGUMENT

I. **THE COMPLAINT STATES A DEFAMATION CLAIM AS DEFENDANTS' STATEMENTS PLAUSIBLY ESTABLISH ACTIONABLE FACT, FALSITY, AND ACTUAL MALICE**

The Complaint states defamation and defamation per se claims because it alleges Defendants published verifiable accusations of fact while disregarding material facts that directly contradicted those accusations. Under New York law, defamation requires a false statement, published to a third party without privilege or authorization, with the required degree of fault, that either caused special harm or constitutes defamation *per se*. *See Celle v. Filipino Rep. Enters. Inc.,* 209 F.3d 163, 176 (2d Cir. 2000); *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (1st Dep't 2014). A statement is defamatory *per se* when it tends to injure the plaintiff in his trade, business, or profession, or imputes serious misconduct of a type that would naturally expose the plaintiff to public contempt or disgrace. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (N.Y. 1992); *Celle*, 209 F.3d at 179. A statement is actionable when a reasonable audience would understand it as asserting or implying a provable falsehood, including where the speaker implies that he possesses undisclosed facts supporting the accusation. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–21 (1990); *see also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289–90 (N.Y. 1986).

A. **Defendants' Statement O'Neill "Didn't Kill bin Laden," Is A "Liar," And Engaged In "Stolen Valor" Are Actionable Factual Assertions And Are Defamatory *per se*.**

Defendants' repeated representations to their audience that O'Neill fabricated his role in the raid that killed Osama bin Laden concern a specific, verifiable historical event. These statements are not the loose, figurative commentary at issue in cases involving rhetorical epithets

or platform-specific banter.  As in *Milkovich* and *Steinhilber*, a reasonably prudent listener could understand Defendants' statements to assert provably true facts and to imply that Defendants possessed undisclosed facts substantiating the charge.  The statements also strike at O'Neill's reputation and professional identity as a former Navy SEAL whose public work and livelihood are inextricably bound to his military service and account of the raid.  The Complaint therefore pleads both actionable defamation and defamation *per se*.

**B. Plaintiff's Complaint Plausibly Pleads Actual Malice As Defendants Misrepresented An Alleged Contrary Source, Lacked Firsthand Verification, And Willfully Disregarded Contrary Evidence Despite Admitting Uncertainty.**

Since Plaintiff concedes his status as a limited-purpose public figure, the sole question on this Motion is whether the Complaint plausibly alleges actual malice.  A public-figure defamation plaintiff must plausibly allege that the defendant published with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) (alteration in the original).  The inquiry is subjective: it asks what the defendants themselves actually believed, not what a reasonably prudent publisher would have believed or investigated prior to publication. *See Goldblatt v. Seaman*, 225 A.D.2d 585, 586 (2d Dep't 1996); *see also Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 474–75 (N.Y. 1993).  Reckless disregard exists where a defendant "entertained serious doubts as to the truth of [the] publication" or had "obvious reasons to doubt the veracity" of the source. *St. Amant v. Thompson*, 390 U.S. 727, 731–32 (1968) (alteration in the original).  At the pleading stage, Plaintiff need only allege facts supporting a *plausible* inference of actual malice and a reasonable expectation that discovery will reveal further evidence of same. *See Biro v. Condé Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015).  It would be fundamentally improper for this Court to lend the

6

imprimatur of judicial credence to Defendants' self-serving account of their own reliance and state of mind by crediting it at the pleading stage.

**1. The Bissonnette "Reliance" Does Not Support The Statements Defendant Made And Was Not In Place Prior To Publication.**

Defendants' malice defense rests on their purported reliance on Bissonette's *No Easy Day* as a "responsible, identified, firsthand source." (ECF No. 26, p. 1, 7). However, Defendants repeatedly misrepresented the contents of *No Easy Da*y—attributing to Bissonnette a certainty about who fired the fatal shot that he never claimed, and never had, since he admits in the very book Defendants invoke that he could not tell from his position whether the rounds struck their target. Nowhere in *No Easy Day* does Bissonnette state that O'Neill lied, that O'Neill did not kill bin Laden, or that anyone other than O'Neill fired the fatal shots. On the decisive question, Bissonnette expressly disclaimed knowledge, writing he could not observe from his "position if the rounds hit the target or not." (Owen & Maurer, *supra*, at 235.) A source who states he could not observe whether the shots struck home does not support a categorical accusation that O'Neill "didn't kill bin Laden." Attributing to a source a certainty he did not claim is itself evidence bearing on reckless disregard. *See St. Amant*, 390 U.S. at 732 (establishing a source's own disclaimed knowledge can furnish the "obvious reason to doubt" the veracity or authenticity of the information).

Reliance is measured at the time of publication. Tucker admitted he never spoke to Bissonnette before "Web of Lies" aired, conceding he had hoped to "talk to a guy who was in the room" before publishing and that, by the time Bissonnette reached out, it was "a little late." I did this podcast. (Ex. D.) Tucker also admitted he never spoke directly to "Red." A defendant cannot rely, at the moment of publication, upon a source he had not yet consulted. The responsible source doctrine of *Dongguk Univ. v. Yale Univ.*, presupposes actual, contemporaneous reliance on a

7

source the publisher had reason to credit at the time of publication; it does not extend to a source invoked only after the fact to justify accusations already broadcast. 734 F.3d 113, 124 (2d Cir. 2013). It has no application where, as here, the purported source was retrofitted to the narrative after the fact, as a litigation justification for accusations Defendants had already broadcast.

Nor is Bissonnette established as a witness to the shooting itself. By his account, Bissonnette entered behind the point man and arrived to find bin Laden already on the floor. Whether he witnessed the killing or reconstructed it from a position behind others is a disputed fact that cannot be resolved in Defendants' favor on the pleadings, and it forecloses the claim that Defendants relied on an eyewitness. (ECF No. 26.) Defendants' Motion asks the Court to treat as established three (3) propositions the Complaint disputes: Defendants relied on Bissonnette before publication, his account shows O'Neill lied, and his account is the accurate one.

This case is therefore the opposite of *St. Amant*'s safe harbor for good-faith reliance. A defendant who builds categorical accusations of fraud on (i) a source he never consulted before publishing, (ii) who never said what the defendant claims, and (iii) who admits he did not see the decisive event has not negated malice—he has supplied same.

### 2. Defendants Disregarded The Most Authoritative Contrary Evidence Available To Them And Their Statements Show They Knew The Question Was Unresolved.

Actual malice may be inferred where a publisher disregards known evidence contradicting its narrative rather than merely failing to investigate. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). The Complaint alleges Defendants knew Admiral McRaven, the operation's commander, had publicly confirmed O'Neill's account, and Defendants dismissed same, stating that "an Admiral who wasn't there won't save you." (Ex. C.) A publisher aware of the most authoritative account available, who disparages it while asserting the opposite as fact, has "obvious reasons to doubt" his own position under *St. Amant*. Defendants instead built

their account on unverified online sources, including Garrett Golden, who, by his own admission, arrived on the rescue helicopter after the raid, never entered Pakistan, and whose account of a torso shot conflicts with the head-shot account in the Bissonnette book Defendants also invoke. Relying on sources that contradict each other while bypassing the named commander's confirmation supports an inference of avoidance rather than diligence.

This avoidance is reflected in Defendants' statements. While asserting O'Neill lied, Defendants said "nobody can tell" (Ex. C) who fired the fatal shot, that multiple accounts exist, and "not even the CIA or anybody can determine" the answer. A defendant who states that the truth cannot be determined and separately asserts as fact that the plaintiff's account is false has published with a degree of awareness of the probable falsity sufficient to support the inference required by *Prozeralik* and *Garrison v. Louisiana*. *See* 82 N.Y.2d at 474–75; 379 U.S. 64, 74 (N.Y. 1964). This internal inconsistency, drawn from Defendants' admissions, is sufficient to defeat dismissal. One cannot simultaneously claim that the answer is unknowable and that one knows the plaintiff is lying. That contradiction, pleaded from Defendants' own statements, is alone sufficient to defeat dismissal.

### 3. Defendants' Contempt, Resentment, And Retaliation Against O'Neill Reinforce The Malice Already Pleaded, And That Question Is For The Jury.

Ill will and financial motive, considered with the above evidence bearing on Defendants' subjective awareness of probable falsity, probatively establish actual malice. *See Celle*, 209 F.3d at 183; *Biro*, 807 F.3d at 547 (recognizing ill will and motive alone are insufficient to establish actual malice but remain probative when considered together with other evidence of subjective doubt). The Complaint alleges Defendants failed to consult any eyewitness, disregarded Admiral McRaven's confirmation, acknowledged the truth was unresolved, expressed resentment "the people who did lie really did make a lot of money," expressed contempt for O'Neill, campaigned

against his business opportunities after this action was filed, and made threats against O'Neill and his family. (O'Neill Decl.; Ex. E.) The totality of the circumstances supports a plausible inference that Defendants' publication was not the product of good-faith journalism.

Whether a defendant acted with actual malice is ordinarily a question for the factfinder, since it turns on the subjective state of mind established through circumstantial evidence and credibility determinations. *Harte-Hanks*, 491 U.S. at 688, 692; *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury."). The Complaint's allegations, Defendants' admissions, their disregard of authoritative contrary evidence, and their demonstrated motive are sufficient to permit a reasonable jury to find actual malice, and dismissal at the pleading stage would prematurely deny Plaintiff a forum to seek redress for actual injuries sustained by reason of Defendants' willful acts.

### 4. Resolving The Conflict Between Admiral McRaven's And Bissonnette's Accounts Is A Jury Question, Not A Pleading Defect.

Defendants' remaining argument asks the Court to conclude Bissonnette's account is more reliable than Admiral McRaven's confirmation, that Admiral McRaven's statement should be discounted because he was not physically present, and that corroborating SEAL statements should be treated as derivative of O'Neill's own account. These are evidentiary and credibility questions that may be tested later, but they cannot be resolved on a motion to dismiss, where the Court must accept the well-pleaded allegations as true and draw reasonable inferences in Plaintiff's favor. *See ATSI*, 493 F.3d at 98; *Anonymous v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017). Defendants' Motion ultimately asks the Court to resolve, at the pleading stage, questions of what Defendants relied on, whether they believed what they published, and whether their public accusations went beyond what their sources supported. Those are questions for discovery and the

factfinder. Plaintiff respectfully requests that the Court deny Defendants' Motion to dismiss the defamation and defamation *per se* claims.

**C. Defendants' Statements Satisfy Each Factor Of The Fact-Or-Opinion Test And Are Therefore Actionable.**

A statement is actionable if it "would be reasonably understood as declaring or implying a provably false fact." *Milkovich*, 497 U.S. at 18–21; *see also Celle*, 209 F.3d at 178–79. New York applies a three-factor test to distinguish fact from opinion: whether the specific language has a precise, readily understood meaning; whether the statement is capable of being proven true or false; and whether the full context signals to the reasonable reader or listener that what is being read or heard is opinion rather than fact. *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (N.Y. 1993); *Steinhilber*, 68 N.Y.2d at 292. All three factors favor Plaintiff here.

The statement that O'Neill "didn't kill Bin Laden" (Compl. ¶ 89, n.12) satisfies each of them. It has a precise, readily ascertainable meaning; it concerns a specific physical event—who fired the shots that killed a specific man in a specific room on a specific night—that is true or false as a matter of historical fact; and it is not a matter of taste, interpretation, or rhetorical hyperbole.

Defendants' contention that the podcast medium converts these accusations into opinion misreads the controlling law. Format and context are relevant only to the third factor and cut against Defendants: the opinion privilege protects statements that disclose the facts on which they are based and do not imply the existence of undisclosed facts. *See Elias v. Rolling Stone LLC*, 872 F.3d 97, 110–11 (2d Cir. 2017). Defendants did the opposite. They repeatedly represented to their audience and the press that they possessed special, undisclosed knowledge—asserting that they had spoken to "multiple people… who were in the building," that "everyone knows Red shot him," and that they had "exposed" O'Neill—while concealing that they had in fact spoken to ***no*** eyewitness. (Ex. C.) Those statements are actionable not because they were expressed in a podcast,

11

but because they implied that Defendants possessed undisclosed facts, unknown to their audience, which substantiated their accusations against O'Neill. *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 95–98 (2d Cir. 2017); *Steinhilber*, 68 N.Y.2d at 290. As *Steinhilber* explains, an opinion is actionable when it implies that "the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." That is precisely the implication Defendants created here. And the accusation of "stolen valor" charges a specific, verifiable falsification of military record—provable, and for that reason, actionable.

### D. The "Gist" Of Defendants' Statements Is False, Not Merely Disputed.

Truth is a complete defense, and a statement is substantially true and therefore not actionable where it would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242–43 (2d Cir. 2017); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (1st Dep't 2015). The inquiry looks to the substance, or "gist," of the statement as understood by its audience—not to a defendant's post hoc characterization of what it meant to say. *Tannerite*, 864 F.3d at 242.

Defendants argue that the *"gist"* of their statements—that O'Neill's account is disputed and may not be truthful—is substantially true because a dispute exists. This is a rewrite of what Defendants actually said. The "gist" of "No he didn't kill Bin Laden!" a series titled "The Web of Lies," and "I'd be as big a liar as Rob O'Neill" (Ex. A) is not *reasonable minds differ*. It is "he is lying and he did not do it." A defendant cannot manufacture substantial truth by recharacterizing a flat factual accusation as a hedge that it was never contained; the comparison is to what Defendants said, not a softer version raised for the first time in their Motion. Representing to an audience that a man fabricated the defining act of his life has a categorically different effect than

stating to that audience that accounts of a chaotic night differ. Falsity is adequately pleaded, and Defendants' effort to soften their own words underscores that they cannot prevail on the statements they made.

## II. THE COMPLAINT'S TIMELY PUBLICATIONS INDEPENDENTLY SUPPORT EACH CLAIM, AND WHETHER PRIOR STATEMENTS WERE REPUBLISHED IS A QUESTION OF FACT FOR A JURY DETERMINATION

Defamation claims under New York law are subject to a one-year limitations period, which runs from the date of first publication. N.Y. C.P.L.R. § 215(3); *Firth v. State*, 98 N.Y.2d 365, 368–69 (N.Y. 2002) (adopting the single-publication rule). A statement is republished, restarting the limitations clock as to the republished statement, where the defendant makes a conscious decision to reissue the material to a new audience, rather than merely leaving existing content passively accessible. *Firth*, 98 N.Y.2d at 371; *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (1st Dep't 2014) (republication requires a "purposeful availment" directed at a new audience). Whether particular conduct constitutes such a republication, as opposed to mere continued availability of the original publication, is ordinarily a fact-intensive inquiry unsuited to resolution on the pleadings. *Martin*, 121 A.D.3d at 103.

Defendants concede that at least three (3) challenged publications fall within the one-year limitations period: (i) a June 2025 Squadcast Live episode; (ii) a September 29, 2025, Counter Culture video; and (iii) an October 2025 Tier-1 broadcast. Those timely publications independently support each cause of action, so the limitations argument cannot dismiss the case; at most, it trims certain earlier allegations. A limitations defense that reaches only some of several publications underlying a single claim does not warrant dismissal of that claim; it goes, if anything, to the scope of recoverable damages. *See Firth*, 98 N.Y.2d at 370.

13

The Complaint alleges that Defendants re-promoted, re-clipped, re-posted, and re-distributed the earlier content to new audiences and incorporated it into later installments of the continuing "Web of Lies" series. These are not allegations that Defendants' earlier content simply remained online; they are allegations of an affirmative, repeated decision to place the same accusations before new audiences through new content and new platforms—precisely the conduct that distinguishes actionable republication from the passive availability the single-publication rule was designed to exclude. Whether such conduct constitutes republication that restarts the limitations clock is a fact question. *Firth*, 98 N.Y.2d at 369–70 (2002).

The earlier statements also remain admissible as evidence of malice and of the campaign's continuity regardless of their independent actionability. Even statements that are ultimately time-barred as independent claims remain part of the factual record bearing on Defendants' state of mind and the duration of their conduct. Defendants' limitations argument does not, and cannot, remove them from the action on this basis. To the extent the Court finds any allegation time-barred, Plaintiff respectfully requests leave to replead the republication facts with greater specificity rather than dismissal to further the interest of justice.

III.   THE COMPLAINT PLEADS FACTS SUFFICIENT TO SUSTAIN EACH REMAINING CLAIM

As noted *supra*, FED. R. CIV. P. 8(a) requires a "short and plain statement of the claim." A plaintiff need only to file a complaint with enough factual matter to be considered "well-pleaded," even if the particulars of the complaint strike the presiding judge as improbable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**A. Plaintiff's Intentional Infliction Of Emotional Distress Claim Is Adequately Pleaded On Non-Duplicative Facts.**

Plaintiff's intentional infliction of emotional distress claim rests upon Defendants' conduct that is independent of and beyond Plaintiff's defamation and defamation *per se* claims. Intentional infliction of emotional distress requires extreme and outrageous conduct, the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress, causation, and severe emotional distress. *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 710 (2d Dep't 2010). The first element sets a deliberately high bar: conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983) (internal quotation marks omitted). The Complaint's allegations meet that standard.

New York courts routinely permit intentional infliction of emotional distress claims to proceed alongside a defamation claim where, as here, the intentional infliction of emotional distress claim is grounded in a separate course of harassing conduct rather than in the defamatory statements themselves. *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 122–26 (2d Cir. 2019) (sustaining intentional infliction of emotional distress claims where the course of conduct extends beyond publication itself). Plaintiff does not repackage his defamation claim as intentional infliction of emotional distress; he identifies a separate pattern of threats and harassment that Defendants directed at him and his family after and because of this litigation.

The Complaint alleges a sustained pattern of targeted intimidation, not an isolated intemperate remark. Arnett's threatened O'Neill with physical violence, stating he looked forward to telling O'Neill to his face to "GO F[—] YOURSELF," and when cautioned that such a threat could constitute contempt, escalated rather than retreated, clarifying he would deliver the threat

"not in the courtroom, outside," and proposing to fight O'Neill "in the dark parking lot." (O'Neill Decl.)  A direct, unprovoked threat of physical violence against a party to ongoing federal litigation is not rhetorical excess; it is the kind of conduct courts have found sufficiently extreme and outrageous to survive a motion to dismiss. *See*, *e.g., Vasarhelyi v. New Sch. for Soc. Rsch.*, 230 A.D.2d 658, 661 (1st Dep't 1996) (recognizing threats of violence support an intentional infliction of emotional distress claim).

Tucker separately directed menacing messages to the social-media account managed by O'Neill's pregnant wife, invoking Admiral McRaven by name to warn that "an Admiral who wasn't there won't save you."  Directing threatening communications at Plaintiff's pregnant spouse, an individual with no role in this litigation, rather than at O'Neill or his counsel is itself probative of outrageousness.  It demonstrates the conduct was calculated to reach O'Neill through the person most likely to cause him fear and distress, not to make a public argument about the merits of Defendants' claims.

The remaining elements are similarly well pleaded. Defendants' threats and retaliatory conduct were intentional or, at minimum, undertaken with disregard of the substantial likelihood that such conduct—threatening physical violence, menacing a pregnant spouse, and attacking a person's livelihood—would cause severe, calculable emotional distress.  The Complaint alleges that Plaintiff in fact suffered such distress as a direct and foreseeable result of Defendants' conduct. At the pleading stage, these allegations suffice, and Plaintiff respectfully requests that this Court sustain the intentional infliction of emotional distress claim.

### B. Plaintiff's Tortious Interference With Prospective Business Relations Claim Is Adequately Pleaded On Non-Duplicative Facts.

Under New York law, a claim for tortious interference with prospective business relations requires the plaintiff had a business relationship with a third party; the defendant knew of that

relationship and intentionally interfered with it; the defendant acted with the sole purpose of harming the plaintiff, or, *alternatively*, employed wrongful means; and the defendant's interference caused injury to the relationship. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–91 (2004); *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 621 (N.Y. 1996). "Wrongful means" includes physical violence, fraud, misrepresentation, civil suits, and defamation itself. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (N.Y. 1980). A plaintiff need not show the defendant's sole motive was malicious where, as here, the defendant's own conduct, a false statement made directly to a business partner, independently qualifies as wrongful means. *Carvel*, 3 N.Y.3d at 190.

The Complaint identifies a specific third party, a specific communication, and a specific improper purpose: Defendants contacted Barstool Sports, Inc. ("Barstool"), which operates a podcast, the *Bold American*, and has previously hosted Plaintiff and has supported his Daytona 500 appearance. Defendants informed a Barstool employee that O'Neill is a liar for the purpose of discouraging further business with him. (Ex. C.) These allegations satisfy each element. Barstool Sports was a known, identified business relationship. A current business opportunity, not a speculative or unnamed prospect. Defendants' communication to Barstool was direct and knowing: they did not merely publish a general accusation that a business associate happened to see but affirmatively contacted a representative of Barstool and specifically told its representatives that O'Neill is a "liar." This communication alone constitutes wrongful means, since a knowingly false statement made directly to a plaintiff's business partner for the purpose of terminating the relationship is independently actionable conduct, not merely evidence of motive. *See Guard-Life*, 50 N.Y.2d at 191. Defendants' purpose was not incidental: Defendants made the statement to

17

Barstool to discourage further business with O'Neill, which is itself the improper purpose the tort requires.

Defendants' reliance on the unrelated Frisco hotel litigation to defeat causation raises, at most, a fact question about concurrent causes that cannot be resolved on the pleadings. Causation for tortious interference requires only that the defendant's conduct was a but-for cause of the lost relationship or opportunity; it does not require that the defendant's conduct be the sole cause. *See Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266–67 (1st Dep't 2002). Where, as here, a defendant identifies a separate, unrelated dispute that might also have affected the business relationship, that showing at most establishes a competing or concurrent cause—a factual dispute for the jury, not a basis for dismissal at the pleading stage. Defendants' Motion asks the Court to weigh the relative significance of two competing causal explanations for Barstool's business decisions without any factual record to do so, which Rule 12(b)(6) does not permit. *ATSI Commc'ns, Inc.*, 493 F.3d at 98.

Plaintiff respectfully requests this Court sustain the tortious interference with prospective business relations claim. To the extent the Court finds the pleading insufficiently specific, Plaintiff requests leave to amend to particularize the Barstool interference and any additional interference revealed in discovery. Leave to amend is particularly appropriate here because the full scope of Defendants' contacts with O'Neill's business partners, including any contacts beyond Barstool, is a matter uniquely within the ambit of Defendants' knowledge and is properly the subject of discovery. *See* FED. R. CIV. P. 15(a)(2) ("[L]eave to amend should be freely given when justice so requires.").

**IV. DEFENDANTS' ANTI-SLAPP FEE DEMAND SHOULD BE DENIED AS DEFENDANTS CANNOT SATISFY THE SUBSTANTIAL-BASIS STANDARD, AND THEIR CONDUCT IS AN ABUSE THE STATUTE TARGETS**

Defendants seek mandatory attorney's fees under N.Y. Civil Rights Law, which authorizes fees only where the action was "commenced or continued without a substantial basis in fact and law." *See* N.Y. Civil Rights Law § 70-a(1)(a). "Substantial basis" means "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." *Reeves v. Assoc. Newspapers, Ltd.*, 232 A.d.3d 10, 12 (1st Dep't 2024); *see also 300 Gramatan Ave. Assocs. v. State Div. of Hum. Rts.*, 45 N.Y.2d 176, 379 (N.Y. 1978) (explaining the substantial basis standard is less than a preponderance standard). The plain statutory text requires a predicate showing as to both the factual and legal basis for the action; it is not satisfied merely because a defendant contends that a pleading fails under Rule 12(b)(6).

The factual record here defeats any contention that the action lacked a substantial basis in fact. The Complaint rests on the sworn affirmation of the four-star admiral who commanded the operation, corroborating affirmations from two fellow SEAL Team Six members, and Defendants' own recorded admissions that they spoke to no eyewitness and that the truth is unknowable. Whatever the Court ultimately concludes about any individual legal theory, that evidentiary foundation is not the sort of factually unsupported pleading § 70-a targets.

Section 70-a's text is conjunctive: fees are authorized only where the action was "commenced or continued without a substantial basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law." N.Y. Civil Rights Law § 70-a(1)(a) (emphasis added). A determination that a given legal theory does not survive Rule 12(b)(6) speaks to the "law" component of that standard. It does not, standing alone, resolve whether the action lacked a substantial basis "in fact"—a question this record answers

independently through the sworn affirmation of the admiral who commanded the operation, corroborating affirmations from two fellow SEAL Team Six members and Defendants' admissions that they spoke to no eyewitness and that the truth is unknowable. Fee-shifting under a conjunctive standard should not follow from a showing addressed to only one of its two required elements.

Defendants' demand is premature and cannot be treated as an automatic consequence of a Rule 12(b)(6) dismissal. Nor does federal practice support Defendants' apparent effort to convert a Rule 12(b)(6) motion into automatic anti-SLAPP fee-shifting. Anti-SLAPP relief in federal court cannot bypass the Federal Rules or collapse the statutory fee inquiry into the pleading inquiry. *See La Liberte v. Reid*, 966 F.3d 79, 87–88 (2d Cir. 2020). At minimum, Defendants must *independently* establish the statutory predicates for fees under § 70-a; they cannot obtain fees simply by relabeling a merits dismissal as proof that the action lacked any substantial basis.

Defendants' invocation of the anti-SLAPP statute is misplaced. The statute's purpose is to protect citizens from the abuse of litigation to silence and punish protected activity. The record herein—threats of violence, menacing messages sent to O'Neill's pregnant wife, and a post-filing campaign to strip O'Neill of his business opportunities—is inconsistent with the conduct the statute was designed to prevent. It is not a basis to shift fees against Plaintiff in this action.

Finally, Defendants' use of the anti-SLAPP statute is inconsistent with the statute's purpose. Anti-SLAPP laws are designed to protect speakers from litigation that chills participation in public debate, not to reward parties who allegedly coupled their speech with threats of violence, menacing messages to a pregnant spouse, and a post-filing campaign to strip Plaintiff of business opportunities. Section 70-a's remedial structure confirms that the statute is concerned with litigation used to harass, intimidate, punish, or maliciously inhibit speech, petition, or association rights. On this record, fee-shifting would not vindicate the statute's purpose; it would invert it.

20

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety, deny Defendants' request for attorney's fees under N.Y. Civil Rights Law § 70-a(1)(a), and grant such other and further relief as the Court deems just and proper. *In the alternative*, should the Court identify any pleading deficiency, Plaintiff respectfully requests leave to amend the Complaint.


Dated: New York, New York
      July 14, 2026

                                  Respectfully Submitted,

                                  */s/ David M. Schwartz*

                                  **DAVID M. SCHWARTZ, ESQ.**
                                  546 Fifth Avenue, 6th Floor
                                  New York, New York 10036
                                  Tel.: (212) 641-0499
                                  david@davidschwartzesq.com

                                  *Attorney for Plaintiff Robert O'Neill*