UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT O'NEILL,

Plaintiff,

-against-

Case No. 7:25-cv-10786-NSR

THE ANTIHERO PODCAST LLC
d/b/a AntiheroPodcast.com,
BRENT TUCKER,
TYLER HOOVER,
COUNTER CULTURE INC.,
TIER1PODCAST LLC d/b/a TIER-1 Podcast.com, and
JAMES ANDREW ARNETT,

Defendants.
----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL**

**DAVID M. SCHWARTZ, ESQ.**
546 Fifth Avenue, 6th Floor
New York, New York 10036
Tel.: (212) 641-0499
david@davidschwartzesq.com

*Attorney for Plaintiff Robert O'Neill*

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .......... 1

**RELEVANT PROCEDURAL HISTORY** .......... 2

**LEGAL STANDARD** .......... 3

I. RULE 11 .......... 3

II. INHERENT AUTHORITY .......... 4

**ARGUMENT** .......... 4

I. DEFENDANTS AND DEFENSE COUNSEL PRESENTED FACTUAL CONTENTIONS LACKING EVIDENTIARY SUPPORT AND CONTINUED TO ADVOCATE THEM AFTER PLAINTIFF IDENTIFIED THEIR DEFICIENCIES .......... 4

A. Counsel Repeatedly Misquoted Plaintiff's Statement to Reverse Its Meaning .......... 5

B. Counsel Asserted That Defendants Performed Prepublication Diligence and Spoke to Mission Participants "In the Building," Even Though Defendants' Own Statements Contradicted That Claim .......... 6

C. Counsel Misattributed to Matt Bissonnette a Statement He Never Made .......... 7

D. Counsel Attributed Language to Binding Authority That Does Not Appear in the Cases Cited .......... 8

E. Defendants' Motion Practice Improperly Relied on Counsel's Declaration to Supply Disputed Facts Outside His Personal Knowledge .......... 9

F. Defendants' continued advocacy after notice independently warrants Rule 11 sanctions. 9

II. INHERENT-POWER SANCTIONS ARE ALSO WARRANTED BECAUSE THE PATTERN REFLECTS BAD-FAITH LITIGATION CONDUCT .......... 10

III. THE ABSENCE OF DEFENDANT DECLARATIONS DOES NOT ITSELF WARRANT SANCTIONS, BUT IT CONFIRMS THE LACK OF EVIDENTIARY SUPPORT FOR THE CHALLENGED FACTUAL ASSERTIONS .......... 11

IV. THE COURT SHOULD IMPOSE TARGETED SANCTIONS SUFFICIENT TO DETER FUTURE MISCONDUCT .......... 12

**CONCLUSION** .......... 13

# TABLE OF AUTHORITIES

## Cases

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 4, 11

*Eastway Constr. Corp. v. City of New York*,
762 F.2d 243 (2d Cir. 1985) .......... 4, 10

*Kropelnicki v. Siegel*,
290 F.3d 118 (2d Cir. 2002) .......... 4

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023). .......... 4, 5, 6, 10

## Statutes

Fed. R. Civ. P. 11(b), Fed. R. Civ. P. 11(c)(1), Fed. R. Civ. P. 11(c)(2) .......... 1, 3, 13

Fed. R. Civ. P. 12(b)(6) .......... 3

Fed. R. Civ. P. 56(c)(4) .......... 9

## PRELIMINARY STATEMENT

Plaintiff Robert O'Neill respectfully cross-moves, pursuant to FED. R. CIV. P. 11(b), FED. R. CIV. P. 11(c)(1), FED. R. CIV. P. 11(c)(2), and this Court's inherent authority, for an order imposing sanctions on Defendants and their counsel, Timothy C. Parlatore, for presenting and later advocating factual contentions to this Court that lacked evidentiary support, were materially misleading, or were demonstrably false. Pursuant to the Court's May 12, 2026, Memorandum Endorsement, this cross-motion is timely served with Plaintiff's opposition papers and is filed only after the Rule 11 safe-harbor period has elapsed. (Dkt. 28.)

This cross-motion does not arise simply because Defendants challenged the Complaint. Nor does Plaintiff seek sanctions because Defendants dispute Plaintiff's allegations. Rather, this motion concerns Defendants' and defense counsel's certification of affirmative factual contentions that lacked evidentiary support, were contradicted by Defendants' own public admissions, and continued to be advocated after Plaintiff specifically identified those defects. Under Rule 11, counsel certifies that factual contentions have evidentiary support or, if specifically identified, will likely have evidentiary support after a reasonable opportunity for investigation or discovery. FED. R. CIV. P. 11(b)(3).

The most striking feature of Defendants' motion practice is what is missing. Across Defendants' pre-motion letters, sanctions request, motion to dismiss, and sanctions motion, not one Defendant submitted a declaration attesting to what he read, who he spoke to, what he believed, or what diligence he performed before accusing Plaintiff of lying about killing Osama bin Laden. (See Dkt. 23); (Dkt. 24); (Defs.' Mem. of Law in Supp. Of Mot. For Sanctions); (Declaration of Timothy C. Parlatore ("Parlatore Decl.")). Instead, defense counsel supplied those factual

assertions himself, despite lacking personal knowledge of the underlying events and relying, in key respects, on anonymous witness interviews, selective quotations, and assertions contradicted by Defendants' own public statements. (See Parlatore Decl.)

Plaintiff identified these deficiencies before Defendants served their motions, yet Defendants neither corrected nor withdrew the challenged factual contentions. Instead, they continued to advocate them. Rule 11 reaches not only the initial certification of unsupported factual assertions, but also their continued advocacy after counsel becomes aware that they lack evidentiary support. Plaintiff therefore seeks narrowly tailored relief: (1) a finding that Defendants and/or defense counsel violated Rule 11; (2) an award of Plaintiff's reasonable attorneys' fees and costs incurred in opposing Defendants' sanctions motion and bringing this cross-motion; (3) an order directing withdrawal or correction of the identified factual misstatements; and (4) such additional non-monetary relief as the Court deems appropriate, including disregard of extra-record factual assertions improperly advanced through counsel in support of the motion to dismiss.

## RELEVANT PROCEDURAL HISTORY

On May 6, 2026, Defendants submitted a pre-motion letter seeking leave to file a Rule 11 sanctions motion. (Dkt. 24.) In that letter, Defendants made a series of factual assertions about Plaintiff's purported admissions, the "official" record of the raid, and alleged witness intimidation. (Dkt. 24.)

Plaintiff responded by letter, identifying multiple false or misleading assertions, including defense counsel's repeated truncation of Plaintiff's quoted statement, counsel's mischaracterization of Matt Bissonnette's account, and counsel's assertion that Defendants had spoken to mission participants "in the building" before publishing the allegedly defamatory material. (Dkt. 27.)

On May 12, 2026, the Court granted both sides leave to file sanctions motions and set a bundled briefing schedule. (Dkt. 28.)

On June 11, 2026, Defendants served, but did not file, their Motion to Dismiss and Sanctions Motion. As Plaintiff's review confirms, the served papers persisted in the same pattern: extra-record factual assertions about prepublication diligence, witness knowledge, and Plaintiff's supposed admissions, but still no declaration from Brent Tucker, Tyler Hoover, James Arnett, or any principal of the entity defendants. The only sworn submission was from counsel, Timothy Parlatore. (See Defs.' Mem. of Law in Supp. Of Mot. For Sanctions); (Parlatore Decl.)

That absence matters. The defect is not that a FED. R. CIV. P. 12(b)(6) motion must always include declarations; it need not. The defect is that Defendants used counsel's unsworn argument and counsel's own declaration to supply contested facts about Defendants' subjective beliefs, prepublication investigation, and anonymous witness accounts, while withholding sworn testimony from the people who supposedly possessed that knowledge. (See Defs.' Mem. of Low in Supp. Of Mot. For Sanctions); (Parlatore Decl.)

## LEGAL STANDARD

### I. RULE 11

By presenting a paper to the Court, an attorney certifies that the filing is not presented for an improper purpose, that the legal contentions are warranted by existing law or a nonfrivolous argument for its modification, and that the factual contentions have evidentiary support or will likely have evidentiary support after reasonable investigation. FED. R. CIV. P. 11(b). The Rule imposes an objective standard of reasonableness, requiring counsel to conduct a reasonable inquiry into both the law and the facts before making factual representations to the Court. *Eastway Constr.*

*Corp. v. City of New York*, 762 F.2d 243, 252-53 (2d Cir. 1985); *Kropelnicki v. Siegel*, 290 F.3d 118, 130-31 (2d Cir. 2002). Where, after filing, counsel learns that a factual contention lacks evidentiary support, continued advocacy of that contention may itself warrant sanctions. *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461–63 (S.D.N.Y. 2023).

**II. INHERENT AUTHORITY**

Independent of Rule 11, a federal court may sanction bad-faith litigation conduct under its inherent authority. That power is reserved for serious abuses and requires a specific finding of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The Supreme Court has cautioned that inherent-power sanctions are appropriate where conduct abuses the judicial process and cannot be adequately addressed otherwise. *Id.* at 46-51.

## ARGUMENT

**I. DEFENDANTS AND DEFENSE COUNSEL PRESENTED FACTUAL CONTENTIONS LACKING EVIDENTIARY SUPPORT AND CONTINUED TO ADVOCATE THEM AFTER PLAINTIFF IDENTIFIED THEIR DEFICIENCIES**

The challenged conduct is best understood as a pattern rather than a series of isolated errors. Throughout Defendants' motion practice, defense counsel repeatedly certified factual contentions central to Defendants' motions that lacked competent evidentiary support, were contradicted by Defendants' own public admissions and other record materials, and remained uncorrected after Plaintiff identified their deficiencies. (See Dkt. 27); (Defs.' Mem. of Law in Supp. Of Mot. For Sanctions); (Parlatore Decl.) The pattern is reflected in four recurring features:

1. Defense counsel advanced factual propositions central to Defendants' motions;

2. Those propositions lacked competent evidentiary support and were contradicted by available record materials, including Defendants' own admissions;

3. No Defendant with personal knowledge submitted a declaration supporting those factual assertions. (See Parlatore Decl.); and

4. After Plaintiff identified these deficiencies, Defendants neither withdrew nor corrected the challenged factual contentions, but continued to advocate them before the Court. (See Dkt. 27); (Defs.' Mem. of Law in Supp. Of Mot. For Sanctions.)

Taken together, this conduct supports sanctions under Rule 11(b)(3). See *Mata*, 678 F. Supp. 3d at 461–63.

**A. Counsel Repeatedly Misquoted Plaintiff's Statement to Reverse Its Meaning**

Defendants repeatedly quoted Plaintiff as stating, in substance, "we're gonna try to drop the case," while omitting the immediately following statement: "I don't want to drop the case. I want to go to court." (See Pl.'s Reply Mem. of Law in Further Supp. of Mot. to Remand, ECF No. 21, at 1–2.) (Dkt. 18.) The omission is not immaterial; it reverses the meaning of Plaintiff's statement. Read in context, Plaintiff was rejecting the anticipated public "spin" that the case would be abandoned. By truncating the quotation, Defendants instead portrayed Plaintiff as expressing an intent to dismiss the action.

Plaintiff specifically identified this omission in his opposition letter. (Dkt. 27.) Nevertheless, Defendants continued to rely on the truncated quotation in their sanctions motion without acknowledging the omitted language. Rule 11 does not permit counsel, once alerted to a material factual inaccuracy, to continue advocating it as though the defect had never been

identified. See *Mata.*, 678 F. Supp. 3d at 461–63 (sanctioning counsel for continuing to advocate factual contentions after their lack of evidentiary support became apparent).

This is not a dispute over advocacy or characterization. It is a dispute over whether counsel may excise the controlling portion of a quotation, invert its meaning, and continue presenting that distorted version to the Court after being expressly notified of the omission. Under *Mata*, the answer is no.

**B. Counsel Asserted That Defendants Performed Prepublication Diligence and Spoke to Mission Participants "In the Building," Even Though Defendants' Own Statements Contradicted That Claim**

Defense counsel publicly stated that his clients, before publishing the challenged episodes, "talked to multiple people who were on that mission who were in the building." (Ex. D.)

But Brent Tucker later stated on his own program:

> "I was really hoping to talk to a guy who was in the room before I did this podcast." (Ex. E.)

That admission is irreconcilable with the narrative that Defendants had already done the diligence counsel claimed. Plaintiff also identified Tucker's admission that he had not spoken to Matt Bissonnette before the original *Web of Lies* release. (Dkt. 27.) (Ex. E.) Media statements are not themselves Rule 11 papers. But they are admissions. And here they matter because they demonstrate that the same factual narrative later presented to this Court—that Defendants had responsibly vetted the story through building-level or room-level firsthand sources—was at best reckless and at worst knowingly false.

Most importantly, no Defendant submitted a declaration to the Court saying otherwise. There is no sworn statement from Tucker, Hoover, or Arnett stating: "Before publication, I spoke to X, Y, and Z"; "Before publication, I spoke to someone in the room"; or "Before publication, I

verified the central accusation through eyewitnesses." Instead, counsel asked the Court to accept that narrative through argument and through his own declaration. (Parlatore Decl. ¶ 15.)

Rule 11 does not permit counsel to certify factual contentions of that kind without evidentiary support. And because Plaintiff had already identified Tucker's contrary admissions, Defendants' continued reliance on the diligence narrative is independently sanctionable as later advocacy of a known false or misleading contention.

### C. Counsel Misattributed to Matt Bissonnette a Statement He Never Made

Defense counsel asserted publicly that Matt Bissonnette "says Rob was not the shooter." The problem is that the cited source does not say that.

As Plaintiff previously pointed out, page 235 of *No Easy Day* states:

"I couldn't tell from my position if the rounds hit the target or not." (Ex. F.)

That is not a statement that Plaintiff was not the shooter. It is an express disclaimer of visual certainty about the decisive moment. Counsel's transformation of that statement into "Bissonnette says Rob was not the shooter" is not advocacy based on an inference. It is a false attribution of a specific statement to a source who did not make it.

That matters doubly here. First, Defendants have repeatedly invoked Bissonnette as the responsible source that supposedly insulates them from actual malice. Second, counsel's sanctions and dismissal theories both depend on converting ambiguity into certainty. A source who says he could not tell cannot honestly be recast as a source who affirmatively said Plaintiff was not the shooter.[1]

[1] After Defendants served their motion, Matt Bissonnette appeared on *Cleared Hot with Andy Stumpf* (July 13, 2026). During that interview, the host stated that Bissonnette was either the "three man" or the "four man." Bissonnette did not identify himself as the "two man" and discussed hearing the shots rather than witnessing the decisive moment from the shooter's position. *See* Ex. G (*Cleared Hot with Andy Stumpf*, July 13, 2026, at approximately 1:35:50). This interview post-dates Defendants' filing

This is the same defect identified by Plaintiff before Defendants served their motions. Yet Defendants continued to frame Bissonnette's account as a direct contradiction of Plaintiff's story. Continued advocacy of that mischaracterization warrants sanctions under FED. R. CIV. P. 11.

**D. Counsel Attributed Language to Binding Authority That Does Not Appear in the Cases Cited**

Defendants' request for leave to move for dismissal represented that reliance on a responsible source "negates a finding of the recklessness that is required for a finding of actual malice," citing *Greene v. Paramount Pictures*, *New York Times Co. v. Sullivan*, and *BYD Co. Ltd. v. VICE Media LLC*. (Dkt. 23.)

Plaintiff has reviewed each cited authority. None contains the quoted language, nor do they state the proposition in the manner represented by Defendants. *Greene* discusses reliance on sources in the context of actual malice but does not hold that reliance on a purportedly "responsible source" categorically negates recklessness. *New York Times* likewise contains no such statement, and *BYD* does not supply the quoted language attributed to it.

Whether the quotation resulted from mistake or carelessness is ultimately beside the point. By submitting the quotation to the Court as though it appeared in binding precedent, counsel certified that the cited authorities supported the proposition advanced. When a quotation materially misstates the authorities on which it purports to rely—and is subsequently left uncorrected despite notice—that conduct further demonstrates the lack of reasonable inquiry underlying the challenged filings and reinforces the pattern of objectively unreasonable litigation conduct addressed by Rule 11.

---

but is consistent with Plaintiff's contention that defense counsel attributed to Bissonnette a statement he has never made.

**E. Defendants' Motion Practice Improperly Relied on Counsel's Declaration to Supply Disputed Facts Outside His Personal Knowledge**

Defendants' motions rest on factual assertions concerning: (1) what Defendants read and relied upon before publication; (2) what unnamed witnesses allegedly told counsel; (3) the meaning of Plaintiff's podcast statements; (4) what the "official" Navy record purportedly establishes; and (5) what mission participants allegedly know or would testify to. Yet, no Defendant submitted a declaration addressing what he personally read, believed, or relied upon before publication, and no witness with personal knowledge submitted a declaration supporting the remaining factual assertions. Instead, defense counsel supplied those facts through his own declaration.

To the extent counsel purports to recount anonymous witness interviews, summarize what unnamed witnesses allegedly reported, or represent what those witnesses are expected to testify to, his declaration does not constitute competent evidentiary support for the factual propositions advanced in Defendants' motions. More fundamentally, counsel lacks personal knowledge of the underlying events and cannot substitute his own declaration for testimony from the individuals whose knowledge is purportedly at issue. See FED. R. CIV. P. 56(c)(4) (requiring declarations to be based on personal knowledge); Fed. R. Evid. 602.

The Court need not conclude that every factual assertion contained in an attorney declaration is improper. The narrower point is sufficient. Where counsel certifies disputed factual contentions central to dispositive and sanctions motions without declarations from the individuals possessing personal knowledge, and continues to advocate those contentions after Plaintiff identifies their deficiencies, the certification required by Rule 11(b)(3) becomes objectively unreasonable. See *Eastway*, 762 F.2d at 253; *Mata*, 678 F. Supp. 3d at 461–63.

**F. Defendants' continued advocacy after notice independently warrants Rule 11 sanctions**

This case does not involve a first-instance factual error. Before Defendants served their motions, Plaintiff specifically identified the principal defects in Defendants' factual narrative, including: (1) the materially misleading truncation of Plaintiff's statement; (2) the contradiction between Defendants' diligence narrative and Defendant Tucker's own public admissions; (3) the misattribution of statements to Defendant Bissonnette; and (4) the broader effort to present disputed or uncertain factual issues as established fact. (Dkt. 27.)

Defendants did not withdraw, correct, or qualify those factual assertions. Instead, they continued to present them in support of their motion to dismiss and sanctions motion. That continued advocacy is independently significant under Rule 11. As Judge Castel explained in *Mata*, Rule 11 reaches not only the filing of unsupported factual contentions, but also "the later advocacy of that statement" after counsel becomes aware of its deficiencies. *Mata*, 678 F. Supp. 3d 443 at 461–63.

The Court should therefore evaluate Defendants' conduct not as an isolated mistake, but as the continued certification and advocacy of factual contentions after Plaintiff specifically identified why those contentions lacked evidentiary support. Under *Mata*, that post-notice advocacy independently supports Rule 11 sanctions.

## II. INHERENT-POWER SANCTIONS ARE ALSO WARRANTED BECAUSE THE PATTERN REFLECTS BAD-FAITH LITIGATION CONDUCT

Even if the Court concludes that Rule 11 alone does not fully address the challenged conduct, sanctions are independently warranted pursuant to the Court's inherent authority. Unlike Rule 11, which applies an objective reasonableness standard, the Court's inherent power requires a finding of bad-faith litigation conduct. *Chambers.*, 501 U.S. at 45–46. The Supreme Court has recognized that a federal court may invoke its inherent authority to sanction a party who has acted "in bad

faith, vexatiously, wantonly, or for oppressive reasons," particularly where the conduct abuses the judicial process. *Id.* at 45–46, 50–51. Rule 11 does not displace that authority; rather, inherent-power sanctions remain available where the Rules are inadequate to address the full scope of the misconduct. *Id.* at 46–51.

The record here supports that heightened standard. This is not a case involving a single inaccurate statement or an isolated mistake. Plaintiff identifies a pattern in which Defendants and their counsel: (1) materially truncated Plaintiff's statement to reverse its meaning; (2) attributed to Defendant Bissonnette a statement he did not make; (3) advanced a prepublication diligence narrative contradicted by Defendants' own admissions; and (4) continued to advocate those factual assertions after Plaintiff specifically identified the defects. Viewed collectively, that pattern reflects more than negligence. It demonstrates a reckless indifference to the accuracy of factual representations submitted to the Court and supports a finding that the challenged filings were presented in bad faith.

This is also the circumstance contemplated by *Chambers*. Although Rule 11 provides an appropriate basis for sanctions, the Court's inherent authority remains available where a pattern of litigation conduct abuses the judicial process as a whole rather than consisting of a single sanctionable filing. See *Chambers*, 501 U.S. at 50–51. Accordingly, if the Court concludes that Rule 11 does not fully remedy the misconduct, it should exercise its inherent authority to impose appropriate sanctions.

## III. THE ABSENCE OF DEFENDANT DECLARATIONS DOES NOT ITSELF WARRANT SANCTIONS, BUT IT CONFIRMS THE LACK OF EVIDENTIARY SUPPORT FOR THE CHALLENGED FACTUAL ASSERTIONS

Plaintiff does not contend that Defendants were required to submit declarations in support of their motion to dismiss. Many Rule 12(b)(6) motions are decided solely on the pleadings. Defendants,

however, did more than challenge the legal sufficiency of the Complaint. They affirmatively represented as fact that they conducted careful prepublication diligence, consulted appropriate sources, and possessed a factual basis for accusing Plaintiff of fabrication. Those are factual assertions concerning Defendants' own conduct and state of mind.

Yet none of the Defendants with personal knowledge submitted a declaration attesting to those facts. Instead, counsel supplied the factual narrative through his own declaration, notwithstanding the absence of personal knowledge and the existence of contrary admissions in the public record. Under those circumstances, the absence of declarations is not itself sanctionable; rather, it underscores that the factual contentions certified by counsel lacked competent evidentiary support.

The issue, therefore, is not the absence of declarations. It is counsel's certification and continued advocacy of disputed factual assertions unsupported by testimony from those with personal knowledge and contradicted by Defendants' own public statements. That is the conduct Rule 11 addresses.

## IV. THE COURT SHOULD IMPOSE TARGETED SANCTIONS SUFFICIENT TO DETER FUTURE MISCONDUCT

Rule 11 provides that any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). Accordingly, Plaintiff does not seek punitive or case-dispositive relief. Rather, Plaintiff requests narrowly tailored sanctions designed to deter the continued certification and advocacy of factual contentions lacking evidentiary support.

Plaintiff respectfully requests that the Court:

1. Find that Defendants and/or defense counsel violated Rule 11(b)(3), and, to the extent applicable, Rule 11(b)(1). Such a finding is warranted because Defendants and counsel repeatedly presented factual contentions lacking evidentiary support and continued to advocate those contentions after Plaintiff identified their deficiencies.
2. Award Plaintiff his reasonable attorneys' fees and costs incurred in opposing Defendants' sanctions motion and bringing this cross-motion. A fee award would compensate Plaintiff for expenses incurred as a direct result of the Rule 11 violation and deter similar litigation conduct in the future.
3. Direct Defendants to withdraw or correct the identified false or materially misleading factual assertions. A corrective order would further Rule 11's remedial purpose by preventing continued reliance on unsupported factual contentions.
4. Disregard extra-record factual assertions advanced through counsel's declaration or briefing to the extent they lack competent evidentiary support. Such relief would prevent prejudice arising from unsupported factual representations while preserving the Court's consideration of properly supported legal arguments.

Plaintiff further requests such other non-monetary relief as the Court deems appropriate, including an admonition, warning, or other measures reasonably calculated to deter comparable conduct. Plaintiff does not seek case-dispositive sanctions. A limited fee award and targeted corrective relief are sufficient to satisfy Rule 11(c)(4)'s deterrent purpose.

## CONCLUSION

Defendants were free to test the Complaint through proper motion practice. They were not free to do so by placing false or misleading factual contentions before the Court, supporting those contentions only with counsel's own declaration, and persisting in them after Plaintiff identified

the errors. For the foregoing reasons, Plaintiff respectfully requests that the Court grant this cross-motion and impose sanctions on Defendants and defense counsel pursuant to FED. R. CIV. P. 11 and the Court's inherent authority, together with such further relief as the Court deems just and proper. This motion concerns not vigorous advocacy, but counsel's continued certification of factual contentions lacking evidentiary support after Plaintiff identified their deficiencies.

Dated: New York, New York
July 14, 2026

Respectfully submitted,

/s/ David M. Schwartz
**DAVID M. SCHWARTZ, ESQ.**
Attorney for Plaintiff Robert O'Neill
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 641-0499
david@davidschwartzesq.com