UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT O'NEILL,

Plaintiff,

-against-

Case No. 7:25-cv-10786-NSR

THE ANTIHERO PODCAST LLC
d/b/a AntiheroPodcast.com,
BRENT TUCKER,
TYLER HOOVER,
COUNTER CULTURE INC.,
TIER1PODCAST LLC d/b/a TIER-1 Podcast.com, and
JAMES ANDREW ARNETT,

Defendants.

-----------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

PARLATORE LAW GROUP, LLP
Timothy C. Parlatore, Esq.
260 Madison Ave., 17th Floor
New York, New York 10016
Attorneys for Defendants

**PRELIMINARY STATEMENT**

Plaintiff commenced this action, and Defendants responded by moving to dismiss and for sanctions, demonstrating that the central allegation of the Complaint is contradicted by Plaintiff's own public statements. Plaintiff's cross-motion does not answer that showing on its own terms. Instead, it asks the Court to sanction defense counsel on the strength of two out-of-court statements to the media, a dispute over a quotation of Plaintiff's own words, a disagreement about how a published source should be characterized, and the permissible use of an attorney declaration on a motion to dismiss. None of those satisfies Rule 11's threshold, and the cross-motion should be denied.

Two of the grounds rest on statements counsel is alleged to have made to a news outlet and on a podcast. Rule 11 does not reach extrajudicial statements; it reaches only papers filed with the court. Anticipating that limit, Plaintiff recasts the media statements as "admissions" and argues they were "later advocated" in Defendants' filings. But Plaintiff identifies no filed paper that contains the statements he challenges, and cites none, because none exists. That failure is dispositive of those two grounds, and in any event plaintiff's cited materials do not establish a contradiction.

The remaining grounds concern court filings but fail on their own terms. On the claim that Defendants truncated Plaintiff's statement about dropping this case, the record shows at most an omission from a single early letter, which Defendants expressly acknowledged and answered once Plaintiff raised it, not the continuing concealment a sanctions motion would require. The claim that a pre-motion letter misattributed a quotation concerns a quotation that accurately stated a settled legal proposition, drawn from a real and binding decision, that was attributed to the wrong case and then corrected. And the theory that counsel became a "substitute fact

witness" by supporting a motion to dismiss without evidentiary declarations misapprehends the office of a Rule 12(b)(6) motion, which is decided on the pleadings. What remains, once the labels are removed, is ordinary, nonfrivolous advocacy, which Rule 11 protects rather than punishes.

## LEGAL STANDARD

Rule 11 is not a tool for routine merits skirmishing. Sanctions are available only on a showing of "objective unreasonableness," and, as to factual contentions, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387–88 (2d Cir. 2003). The certification as to a factual contention is only "that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." *Id.* at 388 (quoting Fed. R. Civ. P. 11 advisory committee's note (1993)). The Second Circuit has repeatedly cautioned that "Rule 11 is not intended to chill an attorney's creative, imaginative or enthusiastic advocacy on his client's behalf," and "does not license a district court to sanction any action by an attorney or party that it disapproves of." *McMahon v. Shearson/Am. Express, Inc.*, 896 F.2d 17, 22 (2d Cir. 1990). Consistent with that principle, the Court of Appeals recently reaffirmed a "construction of Rule 11 'that allows innovation and zealous representation while punishing only those who would manipulate the federal court system for ends inimicable to those for which it was created.'" *Sheehan v. Starbucks Corp.*, No. 25-189 (2d Cir. Mar. 17, 2026) (summary order) (quoting *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir. 1988)).

Rule 11 is also confined to papers presented to the court. It applies only to the conduct of "presenting to the court a pleading, written motion, or other paper," Fed. R. Civ. P. 11(b), and "governs only papers filed with a court," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991). Sanctions under the Court's inherent power, by contrast, reach a broader range of conduct but

demand more: a specific finding of bad faith, supported by clear evidence that the challenged conduct was "entirely without color" and undertaken for an improper purpose. Because Plaintiff invokes both Rule 11 and the inherent power, each is addressed below.

## ARGUMENT

### I. THE TWO GROUNDS RESTING ON COUNSEL'S OUT-OF-COURT STATEMENTS FAIL AS A MATTER OF LAW.

Rule 11 reaches only the presentation of "a pleading, written motion, or other paper" to the court. Fed. R. Civ. P. 11(b). The threshold question for each ground Plaintiff advances is therefore simple: does the challenged statement appear in a filed paper? For two of Plaintiff's grounds, the answer is no, and Plaintiff does not contend otherwise:

| Challenged statement | Where it was made | In a filed paper? | Result |
| --- | --- | --- | --- |
| Defendants spoke with people "in the building" | Statement to a news outlet | No; Plaintiff cites none | Outside Rule 11 |
| Bissonnette "says Rob was not the shooter" | Statement on a podcast | No; Plaintiff cites none | Outside Rule 11 |

The Supreme Court has confirmed that Rule 11 "governs only papers filed with a court." *Chambers*, 501 U.S. at 41. The Second Circuit is in accord: "Rule 11 sanctions must be based on the signature of an attorney or client on a pleading, motion, or other paper in a lawsuit," and the Rule "does not license a district court to sanction any action by an attorney or party that it disapproves of." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991). Where the challenged "misconduct... did not involve any pleading or paper submitted to the court," Rule 11 is simply inapplicable, a conclusion the Second Circuit has called "unexceptionable." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 n.5 (2d Cir. 1995).

Plaintiff does not really dispute this. His own motion concedes that "[m]edia statements are not themselves Rule 11 papers." He seeks to avoid the rule by recasting the statements as

"admissions," and by invoking the "later advocating" language of Rule 11(b) to argue that the same assertions were carried forward into Defendants' court filings. Neither move succeeds.

Relabeling a media statement an "admission" does not change the sanctionable unit. Under Rule 11 that unit is always the certification made in a signed paper; an out-of-court statement offered as evidence that some filing was false is not itself a basis for sanctions. The distinction Plaintiff elides is the one the Second Circuit has drawn expressly: "while Rule 11 extends only to papers filed with the court, the court's inherent power is broader and would permit the court to impose sanctions on the basis of related bad-faith conduct." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). Extrajudicial conduct is the domain of the inherent power, which requires a showing of bad faith, not of Rule 11. Plaintiff seeks the reach of the inherent power on a Rule 11 showing, and the law does not permit it.

The "later advocating" argument fails for the same reason. That language, added to Rule 11(b) in 1993, does not extend the Rule beyond court papers; it creates a continuing obligation with respect to positions already contained in a filed paper. As the Second Circuit has held, the Rule "applies only to assertions contained in papers filed with or submitted to the court," and to be sanctionable a later statement "must relate directly to a particular representation contained in the document that the lawyer is then advocating." *O'Brien v. Alexander*, 101 F.3d 1479, 1489–90 (2d Cir. 1996). The court warned that reading "later advocating" more broadly "would entail a significant and unintended expansion of Rule 11's scope." *Id.* at 1490. The Rule thus requires a direct nexus between the challenged advocacy and a particular representation in a filed paper; it does not convert a statement in the press into a Rule 11 violation because a litigant later ties it to the litigation.

That requirement is dispositive here, because Plaintiff never identifies any filed paper that contains the media statements he challenges. He does not, and cannot, quote a pleading, motion, or brief in which Defendants represented to this Court that they spoke with people "in the building," or that Bissonnette "says Rob was not the shooter"; he cites none, and none exists. The burden of identifying the offending certification is Plaintiff's, and he has not carried it. Absent a filed paper that actually contains the challenged assertions, there is nothing for Rule 11 to reach, and these two grounds fail as a matter of law without regard to whether the statements were accurate.

The two grounds also fail on their own terms, though the Court need not reach the point. As to the "in the building" statement, Plaintiff manufactures a contradiction by treating "building" and "room" as synonyms. The bin Laden compound was a multi-story structure with multiple rooms; a statement that Defendants spoke with people who were "in the building" is not contradicted by Brent Tucker's separate remark that he had hoped to speak with "a guy who was in the room." A person can be in the building without being in the specific room, and Plaintiff's own quotations reflect that distinction rather than erase it.

As to the Bissonnette statement, Plaintiff's premise is that a single sentence in Bissonnette's book is the only thing Bissonnette has ever said about the raid, and that counsel's characterization is sanctionable because it does not match that one sentence. That premise reflects no reasonable inquiry. Before accusing counsel of fabricating what Bissonnette says, Plaintiff did not even account for counsel's own well-documented connection to the source: counsel was admitted pro hac vice to represent Matthew Bissonnette in *United States v. Bissonnette*, No. 1:16-cv-01070 (E.D. Va.) (ECF No. 8), a matter of public record that a minimally diligent inquiry would have revealed. Plaintiff instead rests the entire accusation on

one selectively excerpted line of the book. And Plaintiff's own chosen source refutes him. Plaintiff relies on Bissonnette's statement that he "couldn't tell from [his] position if the rounds hit the target or not" (No Easy Day 235 (Ex. A to Parlatore Decl. ISO Defs.' Reply)), but the same page attributes the fatal shots to the point man: "The point man's shots had entered the right side of his head." (Id.) As Defendants explained in their motion-to-dismiss briefing, Bissonnette's book, read past the one sentence Plaintiff quotes, supports rather than contradicts the account that the point man fired the shots that struck bin Laden. Plaintiff's selective quotation of a single line, and his omission of the balance of the same page that supplies the context, does not transform counsel's characterization into a sanctionable misrepresentation. At most it reflects a dispute about how a published source should be read, which is a merits disagreement, not a Rule 11 violation, and not one a sanctions motion is the vehicle to resolve.

Finally, the effort to sanction counsel for public commentary implicates values Rule 11 was never meant to police. As the Second Circuit has recognized, "[i]t is not the role of Rule 11 to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims," and "a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications." *Sussman*, 56 F.3d at 459.

## II. THE CLAIM THAT DEFENDANTS TRUNCATED PLAINTIFF'S "DROP THE CASE" STATEMENT DOES NOT ESTABLISH A RULE 11 VIOLATION.

Plaintiff's next ground identifies, at most, an omission from a single early letter that Defendants expressly cured once Plaintiff raised it, not the continuing concealment a Rule 11 violation would require. Plaintiff contends that Defendants quoted him as saying he was "gonna try to drop the case" while suppressing his contrary statement that he did not want to drop the case and wished to proceed. The record shows something different.

Defendants' initial letter motion seeking leave to move to dismiss quoted Plaintiff's podcast remark together with its surrounding context: "We don't want to subpoena the whole team. And this is making the whole look, you know, really bad, so for that aspect we're gonna try to drop it. We're gonna try to drop the case." (Letter Mot. for Conference, ECF No. 7, at 2.) That letter did not include Plaintiff's further statement that he did not "want" to drop the case and wished to go to court. Defendants offered the quoted statement for a specific and accurate purpose, that Plaintiff had publicly acknowledged he could not produce eyewitness corroboration; as Defendants put it, "Mr. O'Neill himself acknowledged this fatal weakness in a podcast interview." (Id.)

When Plaintiff objected that Defendants had omitted his statement that he did not "want" to drop the case, Defendants did not persist in a one-sided version; they addressed the point directly and on the record. In their January 20, 2026 letter reply, Defendants wrote: "While Plaintiff is correct that he added that he personally didn't 'want' to drop the case, it does not change the acknowledgment that the other team members will not corroborate his account." (Letter Reply to the Hon. Nelson S. Román, ECF No. 15, at 1.) Counsel thus expressly acknowledged the very words Plaintiff now says were suppressed, credited Plaintiff's objection as "correct," and explained why the addition did not alter Defendants' point. Defendants' subsequent opposition to the motion to remand likewise presented both halves of the statement in a single sentence, noting that "[a]lthough he stated he 'wants to go to court,' he also admitted that he is 'going to try to drop' the case." (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Remand, ECF No. 18, at 4.)

Plaintiff's criticism thus identifies an omission in the initial letter, but not a continuing concealment after Plaintiff raised it. That does not satisfy Rule 11's objective standard. Whatever

the parties' competing readings of Plaintiff's remark, no reasonable attorney could conclude, on this record, that Defendants suppressed the statement, when the record shows they quoted it, credited Plaintiff's point, and explained their position. Defendants' use of Plaintiff's public statement was in all events fair comment on a statement Plaintiff does not deny making. This ground should be rejected.

## III. THE CLAIMED MISQUOTATION IN A PRE-MOTION LETTER WAS AN ACCURATE STATEMENT OF LAW ATTRIBUTED TO THE WRONG CASE, AND IS NOT SANCTIONABLE.

Plaintiff's remaining paper-based ground concerns a quotation in a pre-motion letter. The defect Plaintiff identifies is one of attribution, not substance: the quoted language accurately stated a settled legal proposition, that a defendant's reliance on a responsible source negates the recklessness required for actual malice, but the pre-motion letter attributed that language to the wrong cases, an error counsel corrected once it was identified. The proposition is genuine and binding: the Second Circuit has held that "a defendant's reliance on a responsible source negates a finding of 'the recklessness that is required for a finding of actual malice.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287–88 (1964)). Attributing accurate, binding language to the wrong case, and then correcting it, is not sanctionable. Rule 11 imposes an objective standard of reasonableness, not strict liability for citation error, and a supporting representation is sanctionable only when "utterly lacking in support," not when it accurately states the governing law, is drawn from real and binding authority, and is corrected once the misattribution is identified. *Storey*, 347 F.3d at 388. A corrected citation to a colorable legal proposition does not, without more, establish a Rule 11 violation.

The point is confirmed by the treatment of far graver citation errors. In *United States v. Cohen*, counsel submitted a brief citing cases that did not exist at all. The court declined to

impose sanctions, explaining that although "[t]he citation to non-existent cases is embarrassing and certainly negligent, perhaps even grossly negligent[,]... the Court cannot find that it was done in bad faith." *United States v. Cohen*, No. 18-CR-602 (JMF), 2024 WL 1193604, at *6 (S.D.N.Y. Mar. 20, 2024). If the citation of wholly fabricated authorities did not warrant sanctions absent bad faith, an accurate statement of governing law, drawn from a real and binding decision but attributed to the wrong case and then corrected, cannot warrant them here.

## IV. COUNSEL'S DECLARATION IN SUPPORT OF A MOTION TO DISMISS IS NOT A SANCTIONABLE EFFORT TO "SUPPLY FACTS."

Plaintiff's theme that counsel became a "substitute fact witness" by supporting the motion to dismiss without sworn declarations from Defendants who possessed personal knowledge misapprehends the office of a Rule 12(b)(6) motion. Such a motion tests the legal sufficiency of the complaint on its face; it does not resolve factual disputes or weigh evidence. "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits," and "[t]he Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). On such a motion, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020), the very authority on which Plaintiff himself relies in opposing dismissal. The materials a court ordinarily considers are correspondingly limited to "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

The Parlatore Declaration served a permissible and familiar function within that framework. An attorney declaration may organize, authenticate, and submit underlying documents; it may not serve as substantive proof of disputed facts. The Second Circuit has approved that use, holding that where an affirmation "served primarily to organize and submit the underlying documentary evidence" and was not treated "as substantive evidence," it is unobjectionable, even though counsel lacked personal knowledge of the underlying events. *CIT Bank N.A. v. Schiffman*, No. 23-487 (2d Cir. Mar. 18, 2026) (summary order); see *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999) (an attorney affirmation alone may be insufficient to establish contested matters). Here, the Parlatore Declaration placed before the Court Plaintiff's own public statements, authenticating and organizing the materials on which Defendants' arguments drew. To the extent Plaintiff contends that any particular assertion in that declaration reaches beyond authentication to a disputed fact, his remedy is an ordinary Rule 12 record objection, to have the Court disregard the material or decline to consider it in deciding the motion to dismiss, not Rule 11 sanctions. Plaintiff's invocation of Rule 56(c)(4) and Federal Rule of Evidence 602 is therefore misdirected: those rules bear on the evidentiary weight a declaration may carry as substantive proof, a question that arises at summary judgment or trial, not on the filing of an authenticating declaration.

Even where an attorney conveys factual matter drawn from others, that is ordinary advocacy, not misconduct, so long as the reliance is reasonable in context. Counsel "may, when reasonable, rely on what their clients tell them to support a claim," and a filing crosses the Rule 11 line only where it is one "that no competent attorney could believe, after reasonable inquiry, is well-grounded in fact." *Goldman v. Barrett*, No. 19-3443-cv (2d Cir. Sept. 10, 2020) (summary order). Plaintiff does not, and cannot, meet that standard. As Plaintiff himself

concedes, the absence of Defendant declarations "is not itself sanctionable," and the narrower point he presses is not a defect at all, but the ordinary posture of a motion directed to the pleadings.

## V. THE "PATTERN" THEORY AND THE REQUEST FOR INHERENT-POWER SANCTIONS FAIL.

Unable to sustain any single ground, Plaintiff urges that the grounds be viewed together as a "pattern" of bad faith warranting sanctions under Rule 11 and the Court's inherent power. But a collection of grounds that individually fail does not become sanctionable in the aggregate. Two of the grounds are outside Rule 11 altogether and unsupported on the record in any event; one identifies an omission that Defendants promptly cured; one is an accurate statement of law attributed to the wrong case and corrected; and the last mistakes the ordinary posture of a motion to dismiss for misconduct. A "pattern" assembled from these components is no pattern of sanctionable conduct at all, but a reframing of nonfrivolous advocacy as misconduct, which is precisely what the Second Circuit has cautioned against. *See McMahon*, 896 F.2d at 22; *Sheehan*, No. 25-189.

The demand for inherent-power sanctions fails for the independent reason that it does not meet the governing standard. Inherent-power sanctions require two distinct findings: that the challenged conduct was "entirely without color," and that it was "motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Both must rest on a specific finding of bad faith supported by clear evidence; an inaccurate, disputed, or ultimately rejected position does not suffice. Where, as here, each challenged contention was colorable, and much of it is confirmed by the record and by Plaintiff's own concessions, there is no basis for a bad-faith finding. The point is underscored by *Cohen*: even the submission of fabricated, non-existent authorities was found to be, at most, negligent and not

the product of bad faith. *Cohen*, 2024 WL 1193604, at *6. If that conduct did not meet the bad-faith threshold, the conduct Plaintiff describes here comes nowhere close.

Plaintiff's specific requests fare no better. His request under Rule 11(b)(1) that the filings were interposed for an "improper purpose" cannot rest on the assertion of nonfrivolous positions; "[i]t is not the role of Rule 11 to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims." *Sussman*, 56 F.3d at 459. And his request that the Court "disregard extra-record factual assertions advanced through counsel's declaration" is not a matter for Rule 11 at all. Whether the Court may consider particular materials in deciding the motion to dismiss is governed by the pleading, incorporation-by-reference, integral-document, and judicial-notice rules that define the Rule 12(b)(6) record. It is a merits and evidentiary objection properly raised in Plaintiff's opposition to the motion to dismiss, not a sanction, and it should be addressed in that briefing rather than resolved here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's cross-motion for sanctions in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated: July 30, 2026

Respectfully submitted,
PARLATORE LAW GROUP, LLP

Timothy C. Parlatore
260 Madison Ave., 17th Floor
New York, New York 10016
212-679-6312
timothy.parlatore@parlatorelawgroup.com
*Attorneys for Defendants*