**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ROBERT O'NEILL

Plaintiff,

- against -

THE ANTIHERO PODCAST LLC d/b/a AntiheroPodcast.com, COUNTER CULTURE INC., TIER1PODCAST LLC d/b/a TIER-1 Podcast.com, BRENT TUCKER, TYLER HOOVER, and JAMES ANDREW ARNETT individually,

Defendants.

**Case No.: 7:25-cv-10786-NSR**

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

**DAVID M. SCHWARTZ, ESQ.**
546 Fifth Avenue, 6th Floor
New York, New York 10036
Tel.: (212) 641-0499
david@davidschwartzesq.com

*Attorney for Plaintiff Robert O'Neill*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. FED. R. CIV. P. 11 REACHES WHAT DEFENDANTS REPRESENTED TO THIS COURT, AND DEFENDANT'S OPPOSITION CONFIRMS DEFENDANTS MADE THE SAME REPRESENTATIONS TO THE PRESS ........ **Error! Bookmark not defined.**

A. The Objective Standard Defendants Invoke Cuts Against Their Argument ........ 3

II. EVERY DEFENSE DEFENDANTS PROFFER CONFIRMS THE UNDERLYING MISREPRESENTATION AND MANIPULATION OF THE COURT ........ 4

A. Acknowledging The Omitted "Drop The Case" Language Is Different From Correcting The Filing That Omitted The Language. ........ 4

B. "In The Building" Is Not "In The Room," And Defendants Still Fail To Disclose Which "Witness" They Consulted. ........ 7

C. Defendants' Characterization Of Bissonette's Book Does Not Cure Their Misattributions ........ 8

D. Citing the Wrong Cases For A Quoted Proposition Is Itself The FED. R. CIV. P. 11(b)(2) Violation, Regardless Of Whether The Proposition Exists Elsewhere. ........ 9

E. Defendants' Counsel Cannot Call His Declaration Mere Authentication When It Is Challenged and Substantive Proof When It is Convenient ........ 10

III. THE "LATER ADVOCACY" ISSUE IS NOT DEFEATED BY DEFENDANTS' FORMALISTIC READING OF RULE 11 ........ 12

IV. THE RECORD SUPPORTS INHERENT-AUTHORITY SANCTIONS OR, AT MINIMUM, TARGETED CORRECTIVE RELIEF ........ 13

A. Six Separate Instances Of The Same Strategy Satisfy Even The Demanding Inherent-Authority Standard ........ 13

B. Plaintiff Seeks A Correction And Fees, Not The Dismissal Defendants Accuse Him of Wanting. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 13, 14

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023) .......... 6

*O'Brien v. Alexander*,
101 F.3d 1479 (2d Cir. 1996) .......... 2, 12

*Storey v. Cello Holdings, L.L.C.*,
347 F.3d 370 (2d Cir. 2003) .......... 3, 4, 10

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
564 F.3d 110 (2d Cir. 2009) .......... 13

**Rules**

FED. R. CIV. P. 11 .......... passim

FED. R. CIV. P. 12 .......... 11

FED. R. CIV. P. 56 .......... 11

FED. R. EVID. 602 .......... 11

## PRELIMINARY STATEMENT

Defendants' Opposition confirms rather than defeats Plaintiff's Cross-Motion. Defendants concede that counsel omitted material language from Plaintiff's statement, attributed a legal proposition to the wrong authorities, and relied on counsel's declaration to present factual assertions concerning sources, witness knowledge, and prepublication investigation. Their principal defense is not that the challenged assertions were accurate as presented, but that they were later explained, corrected, or supported by an inference that Defendants now ask the Court to adopt.

This response does not resolve the FED. R. CIV. P. 11 issue. The question is whether Defendants and their counsel made objectively reasonable factual and legal representations in papers submitted to the Court, and whether they continued advocating those representations after Plaintiff identified their deficiencies. Rule 11 requires evidentiary support for factual contentions and a reasonable legal inquiry; it does not permit counsel to present disputed inferences as established facts, materially truncate a quotation, or attribute language to authority that did not contain it. *See* FED. R. CIV. P. 11(b)(2)(3).

Plaintiff narrows the relief sought considering Defendants' Opposition. Plaintiff does not ask the Court to impose Rule 11 sanctions merely because counsel made an extrajudicial statement, nor does Plaintiff contend that the absence of a defendant declaration, standing alone, establishes a violation. Rather, the extrajudicial statements and the absence of firsthand declarations are relevant evidence concerning the factual basis for assertions later presented to the Court. The sanctionable conduct is the submission and continued advocacy of those assertions in court papers after Plaintiff specifically identified their defects.

Plaintiff respectively requests that this Court grant his Cross-Motion, or, *alternatively*, order Defendants and counsel to withdraw or correct the challenged factual representations and award Plaintiff the reasonable fees and expenses directly resulting from the violations.

## ARGUMENT

### I. FED. R. CIV. P. 11 REACHES WHAT DEFENDANTS REPRESENTED TO THIS COURT, AND DEFENDANT'S OPPOSITION CONFIRMS DEFENDANTS MADE THE SAME REPRESENTATIONS TO THE PRESS

Defendants spend the opening pages of their Opposition establishing a point Plaintiff never disputed: a statement made only to the press or on a podcast, standing alone, is not a Rule 11 violation. Rule 11 applies to a "pleading, written motion, or other paper" presented to the Court. FED. R. CIV. P. 11(b). However, Plaintiff's concession does not dispose of his Cross-Motion, as Plaintiff never sought sanctions for the media statements as independent Rule 11 violations. Plaintiff relies on those statements as evidence bearing on whether Defendants' later filings had evidentiary support and whether counsel's continued factual representations were objectively reasonable.

The operative question is not whether counsel once spoke publicly, but whether counsel thereafter made or continued to advocate the same factual representations in papers submitted to this Court. The Second Circuit has recognized that Rule 11 reaches assertions contained in papers filed with or submitted to the court and that later advocacy must relate to a particular representation contained in the paper being advocated. *See O'Brien v. Alexander*, 101 F.3d 1479, 1489–90 (2d Cir. 1996).

Defendants' Opposition identifies the relevant court papers: the May 6, 2026, pre-motion letters (ECF Nos. 23–24); the January 20, 2026, reply letter (ECF No. 15); the Opposition to Plaintiff's Motion to Remand (ECF No. 18), Defendants' Motion to Dismiss, Defendants'

sanctions Motion, and the Parlatore Declaration submitted in support of the sanctions Motion and relied upon in the Motion to Dismiss. Accordingly, the question is not whether the statements "in the building" or "Bissonnette says Rob was not the shooter" appeared verbatim in Defendants' filings, but whether the underlying factual representations were presented to the Court—as when Defendants asserted that Bissonnette's firsthand account "directly contradicts O'Neill's version of events." (ECF No. 29, p. 2.). Defendants' reading of Rule 11 would require identical wording rather than a particular factual representation later advocated through a court paper; Rule 11 contains no such limitation, and this Court should not read one into the Rule.

### A. The Objective Standard Defendants Invoke Cuts Against Their Argument.

Defendants are correct in asserting Rule 11 is not a substitute for ordinary merits litigation, but that principle does not rescue the specific representations at issue here. Rule 11 does not punish a party merely because a factual position is disputed, a legal argument loses, or a court ultimately adopts the opposing side's interpretation. It does, however, require evidentiary support for the specific factual representation presented to the court—precisely what Defendants are incapable of showing.

The governing standard does not immunize factual assertions that are objectively unsupported or materially misleading. For factual contentions under Rule 11(b)(3), the relevant question is whether the challenged representation was "utterly lacking in support" when presented or later advocated. *Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370, 387–88 (2d Cir. 2003). Counsel needed evidentiary support for the specific factual representations presented to the Court, including the representation that Bissonnette was a "responsible source" whose firsthand account directly contradicted Plaintiff's account (ECF No. 29, p. 2, 9), and the Opposition does not supply same.

Defendants repeatedly reframe Plaintiff's Cross-Motion as a dispute about whose version of events is correct, whose interpretation of a source is better, or who ultimately has the stronger legal argument. This reframing misses the point. The question is whether Defendants had evidentiary support for the specific factual assertion presented to the Court; not whether Plaintiff interprets a source differently, but whether counsel represented an inference as the source's actual statement; not whether counsel later explained an assertion, but whether the original paper was withdrawn or corrected rather than re-advocated; not whether counsel submitted a declaration, but whether that declaration authenticated documents or instead supplied unsupported factual assertions; and not whether Defendants' legal proposition was generally correct, but whether counsel accurately attributed that proposition to the authority actually cited. The Second Circuit applies an *objective* standard to each of these questions, not a subjective-belief standard. *Storey*, 347 F.3d at 387–88.

Indeed, Defendants did not merely identify competing accounts; they affirmatively represented to the Court that the accounts "cannot be reconciled" and that Bissonnette's account directly contradicts Plaintiff's. Defendants therefore cannot prevail simply by demonstrating that counsel had an argument. Counsel must also have had a reasonable factual and legal basis for the particular representations made to the Court. (ECF No. 29, p. 2, 8.)

## II. EVERY DEFENSE DEFENDANTS PROFFER CONFIRMS THE UNDERLYING MISREPRESENTATION AND MANIPULATION OF THE COURT

### A. Acknowledging The Omitted "Drop The Case" Language Is Different From Correcting The Filing That Omitted The Language.

Defendants acknowledge that their initial pre-motion letter quoted Plaintiff's statement that he was going to "try to drop the case," but did not include Plaintiff's immediately qualifying statement that he did not want to drop the case and wanted to go to court. (ECF No. 7, p. 2.). The

omission was not collateral; it inverted the statement's meaning. The complete exchange, as identified in Plaintiff's Cross-Motion, represents Plaintiff stating he was going to "try to drop the case" immediately followed by " I don't want to drop the case. I want to go to court." Defendants specifically used the truncated version to argue that Plaintiff had acknowledged a "fatal weakness" in his case and intended to abandon same. Once the omitted language is included, that characterization becomes materially misleading, as Plaintiff expressly stated that he did *not* want to abandon the action. He was, at most, flagging that the absence of corroboration from other team members might create a practical problem while stating in the same breath that he wanted the matter to proceed to court.

A quotation that omits the language directly qualifying the proposition for which it is offered is not transformed into a complete and fair presentation merely because the quoted words were literally spoken. Rule 11 requires factual contentions to have evidentiary support, and that requirement applies to the factual proposition actually presented to the Court. *See* FED. R. CIV. P. 11(b)(3).

Defendants argue that they "cured" the problem by acknowledging in a later letter that Plaintiff had said he did not "want" to drop the case. (ECF No. 15 at 1.) That argument conflates acknowledgment with correction. Acknowledging that omitted language exists is entirely different from correcting the representation it undermines, and Rule 11(c)(2)'s safe harbor provision applies only where the challenged paper, claim, defense, contention, or denial is "withdrawn or appropriately corrected" within the applicable period. *See* FED. R. CIV. P. 11(c)(2). Defendants did not withdraw the original pre-motion submission; instead, they defended its use and continued to argue that Plaintiff's statement demonstrated that he could not produce corroborating witnesses. (ECF No. 15 at 1.) Nor did they simply present the complete context and abandon the misleading

implication—their later filings continued to rely on the proposition that Plaintiff had admitted the other team members would not corroborate his account. (ECF No. 18 at 4.) This may be a permissible merits argument if supported by the complete record, but it does not render the original truncated presentation accurate, nor does it establish that the challenged assertion was "appropriately corrected" within the meaning of Rule 11(c)(2).

The distinction Defendants elide is the distinction between saying "Plaintiff is correct that he also said he wanted to go to court" and saying, "our prior presentation omitted material context and should not be relied upon for the proposition that Plaintiff intended to abandon the action." Defendants did the former. Rule 11(c)(2) required the latter. Defendants' description of the later letter demonstrates acknowledgment, not correction, and the omission mattered precisely because Defendants used the statement to support a factual conclusion, not merely to make a passing point. The pre-motion letter characterized the statement as an admission of a "fatal weakness" in Plaintiff's case and used it to support dismissal and sanctions. (ECF No. 7 at 2.) The truncated quotation therefore did more than omit surplusage; it changed the context in which the Court was asked to evaluate Plaintiff's credibility, the availability of corroborating evidence, and the viability of his claims. A reasonable attorney conducting a reasonable inquiry would have reviewed the full recording or transcript before presenting the statement as an admission, and once Plaintiff identified the omitted language, continued reliance on the truncated version without expressly correcting the original submission was objectively unreasonable. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461–63 (S.D.N.Y. 2023) (Rule 11 may reach continued advocacy after counsel becomes aware of a factual deficiency).

**B. "In The Building" Is Not "In The Room," And Defendants Still Fail To Disclose Which "Witness" They Consulted.**

Defendants argue that Plaintiff manufactured a contradiction by treating "in the building" and "in the room" as synonyms. That response is a word game, not evidence, and it does not establish that Defendants responsibly vetted the central accusation through firsthand resources. Counsel represented that Defendants had spoken to multiple people who were on the mission and "in the building" (Ex. D), while Defendant Brent Tucker separately stated that he had hoped to speak with "a guy who was in the room" before doing the podcast (Ex. E)—two materially different propositions that Defendants have never reconciled.

Defendants now ask the Court to infer from counsel's reference to people "in the building" that those individuals possessed information sufficient to support the accusation that Plaintiff did not shoot bin Laden. However, the fact that a person was somewhere in a building does not, without more, establish that the person witnessed the shooting, knew who fired, or provided information before Defendants published the challenged accusations. That is precisely the point Plaintiff raised. The issue is not a semantic dispute about architecture. It is whether Defendants had a competent factual basis for making a categorical accusation concerning an event that occurred in a particular room and whether they actually consulted a person with firsthand knowledge of that event before publication.

The Opposition still does not identify who was allegedly consulted, when, what any of them said, whether any of them witnessed the shooting, or whether any Defendant actually relied on them before publishing. Instead, Defendants ask the Court to accept counsel's generalized description of unnamed sources. Entirely insufficient where the assertion was central to Defendants' contention they acted responsibly and lacked actual malice.

Plaintiff does not argue that an attorney can never rely on information supplied by a client or witness. Rule 11 permits reasonable reliance on information obtained during a reasonable inquiry. But counsel must still have a reasonable basis for the specific factual contention presented, and a vague reference to unnamed people "in the building" does not, without more, establish evidentiary support for the proposition that Defendants consulted a firsthand source who could verify the accusation. *See* FED. R. CIV. P. 11(b)(3).

**C. Defendants' Characterization Of Bissonette's Book Does Not Cure Their Misattributions.**

Defendants contend that Plaintiff selectively quoted one sentence from *No Easy Day* and omitted the sentence stating that "[t]he point man's shots had entered the right side of his head." Defendants argue that the page, read as a whole, supports their characterization that Bissonette said the point man fired the fatal shots. None of that resolves the central problem: in the words actually attributed to him, Bissonette never said "Rob was not the shooter." The source language identified by both parties is: "I couldn't tell from my position if the rounds hit the target or not." (Ex. F.)

Defendants' additional quotation may support an inference concerning the point man. It does not convert Bissonette's account into a categorical statement that he never made; at minimum, Defendants' formulation presents their own interpretation as though it were Bissonette's direct statement.

This distinction is material because Defendants relied on Bissonette as a supposedly "responsible source" whose account allegedly defeated Plaintiff's actual-malice theory. (ECF No. 29, p. 8–9.) Stating that Bissonette could not tell whether the rounds hit the target, saying that Bissonette wrote that the point man's shots entered the right side of the head, and saying that "Bissonette says Rob was not the shooter" are three different propositions, not three phrasings of

the same one. Each carries a different degree of certainty and different implications for the parties' competing factual accounts.

Defendants' argument that the page supports their inference may be relevant to the merits. It does not establish that counsel accurately attributed the categorical proposition to Bissonnette. Rule 11 requires evidentiary support for the factual contention presented to the Court, including the degree of certainty attributed to the underlying source. *See* FED. R. CIV. P. 11(b)(3).

Plaintiff recognizes that this issue, standing alone, may not warrant the most severe sanction. It nevertheless supports the requested corrective relief and is relevant to the totality of counsel's repeated presentation of contested factual propositions as settled facts. Moreover, in evaluating counsel's repeated representations, the Court may consider that Defendants have not submitted a declaration from Tucker, Hoover, or Arnett stating that the challenged podcast statements were made in reliance on Bissonnette's book. Instead, counsel himself asserts that *No Easy Day* was "the primary source Defendants relied on in producing their podcast." (ECF No. 32, ¶ 9.) To date, the record contains no corresponding sworn statement from a Defendant establishing that reliance.

### D. Citing the Wrong Cases For A Quoted Proposition Is Itself The FED. R. CIV. P. 11(b)(2) Violation, Regardless Of Whether The Proposition Exists Somewhere Else.

Defendants concede that the quotation concerning reliance on a "responsible source" was attributed to the wrong authorities, although they contend that the proposition itself appears in another binding decision. Their concession is dispositive on the narrow point: the quotation, as submitted, was not accurately supported by the authorities cited, and Rule 11 requires a reasonable inquiry before it was presented. *See* FED. R. CIV. P. 11(b)(2). A citation that attributes quoted language to cases that do not contain the language is materially different from an uncited but good-faith legal argument.

Plaintiff does not ask the Court to impose a substantial monetary sanction solely because of one corrected citation error. Defendants' later correction may bear on the appropriate remedy. But the correction does not erase: (i) the initial misattribution; (ii) the fact that the quotation was presented as though drawn from the cited authorities; (iii) Plaintiff's need to identify and correct the error; or (iv) the cumulative significance of the error when considered with the disputed factual representations and truncated quotation.

The Second Circuit has emphasized that Rule 11 sanctions require restraint and are not appropriate for every mistake. *Storey*, 347 F.3d at 387–88. Plaintiff's requested relief is consistent with that principle: a targeted correction and fees directly attributable to addressing the challenged filings, rather than punitive or case-dispositive relief.

**E. Defendants' Counsel Cannot Call His Declaration Mere Authentication When It Is Challenged and Substantive Proof When It is Convenient.**

Defendants characterize counsel's declaration as serving the permissible function of organizing and authenticating documents submitted with a Rule 12(b)(6) motion. Plaintiff does not dispute that an attorney may submit documents for authentication or organization. The problem is that counsel's declaration goes well beyond authentication: it asserts what unnamed witnesses allegedly told counsel, what those witnesses are expected to testify to, what Defendants knew before publication, what they allegedly did to verify the accusation, and what disputed historical evidence purportedly establishes—none of it within counsel's personal knowledge. (ECF No. 32, ¶ 15.)

Defendants' answer attempts to avoid the problem by saying that any improper factual assertion should simply be disregarded as outside the Rule 12(b)(6) record. That response supports, rather than defeats, Plaintiff's position. Defendants cannot rely on counsel's declaration as substantive support when convenient and then characterize the same material as merely

organizational when its evidentiary deficiencies are challenged. A Rule 12(b)(6) motion ordinarily tests the sufficiency of the complaint and does not resolve factual disputes or weigh evidence. *See* FED. R. CIV. P. 12(b)(6). The Court generally considers the complaint, documents attached to it, documents incorporated by reference, and documents integral to the complaint. *See* FED. R. CIV. P. 12(d). If the Court considers matters outside that limited record, the motion may be treated as one for summary judgment subject to the applicable procedural protections. *Id.* The evidentiary rules reinforce the distinction: a declaration submitted to establish disputed facts must be based on the declarant's personal knowledge. *See* FED. R. CIV. P. 56(c)(4). Testimony must likewise be based on the witness's personal knowledge. *See* FED. R. EVID. 602. Defendants' counsel's description of what unidentified third parties allegedly said is *not* personal knowledge of the underlying events.

Plaintiff's Cross-Motion does not ask the Court to decide the ultimate admissibility of every statement in counsel's declaration. It asks the Court to determine whether counsel had a *reasonable* evidentiary basis for presenting disputed factual propositions as established facts in support of dispositive and sanctions motions. Either the declaration is merely authenticating, in which case the Court should disregard counsel's substantive factual assertions and decide the motion solely on the proper Rule 12 record or Defendants rely on it substantively, in which case the Court should assess whether the assertions were based on personal knowledge and whether counsel had a reasonable basis to present them as fact. Under either approach, Defendants cannot use an attorney declaration to supply an evidentiary record their motion otherwise lacks and then avoid Rule 11 scrutiny by calling the declaration "ordinary advocacy."

## III. THE "LATER ADVOCACY" ISSUE IS NOT DEFEATED BY DEFENDANTS' FORMALISTIC READING OF RULE 11

Defendants rely on *O'Brien v. Alexander*, for the proposition that later advocacy must relate directly to a representation contained in a filed document. 101 F.3d at 1489–90. Plaintiff agrees with that limitation. The limitation is satisfied here. The challenged representations, Plaintiff's alleged intention to abandon the action, the alleged absence of corroboration, Defendants' purported prepublication consultation with knowledgeable mission participants, Bissonnette's alleged direct rejection of Plaintiff's account, Defendants' reliance on a "responsible source," and counsel's factual description of what witnesses and sources purportedly established, all appeared in, or were carried forward through, court submissions.

Plaintiff is merely asking the Court to evaluate whether subsequent court filings repeated, relied on, or materially incorporated those same propositions after Plaintiff identified their deficiencies. Reading Rule 11 the way Defendants urge would render the continuing-certification language in Rule 11(b) superfluous: Rule 11 applies when an attorney presents a paper "by signing, filing, submitting, or later advocating it." *See* FED. R. CIV. P. 11(b). The phrase "later advocating" necessarily contemplates that an attorney may violate the Rule by continuing to press an unsupported representation after its deficiency becomes apparent.

That is what Plaintiff alleges here. Defendants were placed on actual notice of the specific defects before serving their motions. (ECF No. 27). The Cross-Motion identifies the notice provided, including the omitted language, the contradiction concerning prepublication investigation, the Bissonnette attribution, and the inaccurate authority. Defendants did not withdraw the challenged factual narrative. They defended it, recharacterized it, and continued to rely on it. (ECF Nos. 7, 15, 18, 29; p. 8–9, 32; ¶¶ 9, 15.)

## IV. THE RECORD SUPPORTS INHERENT-AUTHORITY SANCTIONS OR, AT MINIMUM, TARGETED CORRECTIVE RELIEF

### A. Six Separate Instances Of The Same Strategy Satisfy Even The Demanding Inherent-Authority Standard.

Defendants correctly observe that inherent-authority sanctions require a more demanding showing than Rule 11 sanctions. The Court must find bad faith, and the conduct must be sufficiently serious to constitute an abuse of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 50–51 (1991). The Second Circuit has described the standard as requiring clear evidence that the challenged conduct was entirely without color and motivated by an improper purpose. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

Plaintiff does not rely on any single isolated mistake to establish bad faith; he relies on six of them, all pointing the same direction. Defendants submitted a truncated quotation that omitted language materially qualifying the proposition it was offered to prove, then continued relying on that characterization after Plaintiff identified the omission. Counsel advanced a prepublication-diligence narrative that Plaintiff showed was inconsistent with Defendant Tucker's own public statement. Counsel converted an inference drawn from Bissonnette's account into Bissonnette affirmatively stating that Plaintiff was not the shooter. Counsel attributed quoted language to authorities that did not contain it. Further counsel's declaration supplied factual assertions about unnamed witnesses and prepublication investigation without a single declaration from a Defendant who actually possessed that knowledge.

The pattern matters because these issues involved the same litigation strategy: present a contested or qualified proposition in a more certain form, use that certainty to attack Plaintiff's claims, and resist correction after the defect was identified.

Plaintiff acknowledges that the inherent-power standard is demanding and that the Court may conclude that Rule 11 provides the more appropriate basis for relief. However, if the Court finds that the repeated conduct was undertaken with reckless indifference to the accuracy of factual representations submitted to the Court, the inherent authority provides an independent basis for narrowly tailored sanctions. *See Chambers,* 501 U.S. at 45–46, 50–51.

### B. Plaintiff Seeks A Correction And Fees, Not The Dismissal Defendants Accuse Him of Wanting.

Defendants characterize Plaintiff's Motion as seeking punitive relief. That is incorrect. Rule 11 provides that a sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct. *See* FED. R. CIV. P. 11(c)(4). Plaintiff's requested relief is consistent with this limitation: a finding that Defendants and/or counsel violated Rule 11(b)(3), and, where supported, Rule 11(b)(1); reasonable fees and costs incurred in opposing Defendants' sanctions motion and bringing the Cross-Motion; withdrawal or correction of the identified factual representations; disregard of unsupported extra-record factual assertions in deciding the motion to dismiss; and such nonmonetary relief as the Court deems appropriate. Plaintiff does not seek dismissal of Defendants' defenses, disqualification of counsel, or any other case-dispositive sanction. The requested relief is especially appropriate because Defendants' Opposition confirms that the disputed assertions were acknowledged, explained, or defended only after Plaintiff identified the problems.

A targeted corrective order does not chill vigorous advocacy; it simply holds Defendants to the line between arguing that Plaintiff's account is disputed, that Bissonnette's book admits of a different reading, or that discovery may yet vindicate their prepublication diligence—all of which remain open to them—and presenting those disputed inferences to the Court as established facts, which Rule 11 does not permit.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's opening memorandum, Plaintiff respectfully requests that the Court: (a) grant Plaintiff's Cross-Motion for sanctions under FED. R. CIV. P. 11(b)–(c) and, where appropriate, the Court's inherent authority; (b) find that Defendants and/or defense counsel presented and continued to advocate factual contentions without adequate evidentiary support; (c) award Plaintiff reasonable attorneys' fees and costs incurred in opposing Defendants' sanctions motion and prosecuting this Cross-Motion; (d) direct Defendants and counsel to withdraw or correct the identified materially misleading factual representations; (e) disregard unsupported extra-record factual assertions advanced through counsel's declaration in deciding the motion to dismiss; and (f) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 13, 2026

Respectfully Submitted,

/s/ *David M. Schwartz*

**DAVID M. SCHWARTZ, ESQ.**
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 641-0499
david@davidschwartzesq.com

*Attorney for Plaintiff Robert O'Neill*